### J. E. FOSTER ET AL. v. J. H. EOFF ET AL.

Decided October 19, 1898.

**1. Vendor and Vendee—Executory Contract—Failure of Title—Purchase Money and Improvements.**

See opinion for facts under which vendees under an executory sale of land were held not in default,—the title tendered by the vendor not being shown to be good,—and were entitled to have the land charged with a lien for the part purchase money paid and value of improvements placed by them on it.

**2. Vendor and Vendee—Title—Defect in Chain—Subsequent Deeds.**

The exclusion of deeds offered to show title in the vendors was not prejudicial, where the title shown, if they had been admitted, was defective for want of proof of a necessary link in their chain of title,—the heirship of certain parties under whom they claimed,—they having recovered back the land, and the issue being whether their title was sufficient to show the vendees to be in default for not completing the trade.

**3. Executory Contract.**

A contract for sale of land for which the purchasers were to complete payment on delivery of a warranty deed conveying good title, was executory, and the purchasers were not in default until such title was tendered.

**4. Same—Title Perfected by Limitation.**

The title of the vendors in such case was not perfected, so as to require the vendees to comply with the purchase, by reason of the fact that they had held possession under their contract for the statutory period of limitation.

**5. Executory Sale—Return of Purchase Money—Rights of Purchaser from First Vendee.**

The purchaser from the vendee in an executory contract for sale of land acquired the right of such vendee to a return of the purchase money paid by the latter on the failure of the first sale by reason of defects in the title of the vendor therein.

**6. Same—Parties.**

Where both the first vendee and the purchaser from him were parties to a suit in which the original vendor recovered back the land and the purchaser from his vendee had judgment for the purchase money and improvements, both the first vendee and the purchaser from him were bound by the judgment and the vendor can not complain that the wrong one recovered back the purchase money.

**7. Rescission of Sale—Use and Occupation of Property—Pleading.**

Where the vendors in an executory contract for sale of land recover it back charged with a lien for purchase money and improvements of the vendees, they can not charge the vendees in turn with the value of the use and occupation of the land while held by them, without pleadings to that end.

**8. Minority—Pleading.**

A plea of minority of plaintiff, interposed as an answer to defendant's plea of limitation against his suit for recovery of land, will not avail as against another part of defendant's case in which he seeks to recover back purchase money paid, on plaintiff's retaking the land.

**9. Trial Amendment—After Judgment.**

Defendants on a demurrer being sustained obtained leave to file a trial amendment, the court proceeding with the trial, saying it could be filed later on; the filing of such amendment after judgment was not prejudicial error where it worked no surprise on plaintiff.

**10. Vendor and Vendee.**

One not a party to an executory contract for sale of land, but who received a part of the purchase money, is equally liable with those making the contract for a return of the purchase money and value of improvements made by vendee, where he unites with the vendor to recover it back upon the trade failing through defects in the title.

APPEAL from Brown. Tried below before Hon. J. O. WOODWARD.

*T. C. Wilkinson* and *I. J. Rice,* for appellants.

*Goodwin & Grinnan,* for appellee.

FISHER, CHIEF JUSTICE.—This action is by J. E. Foster and Cora B. Foster against J. W. Turney, Nat Burns, William Burns, and J. H. Eoff, as stated in their amended petition, filed January 3, 1898, wherein they sue in ordinary action of trespass to try title to recover from defendants the land in controversy, and in a further count state that in the event they are not entitled to recover the land, then they pray for a foreclosure of a vendor's lien. On this branch of the case they plead that the plaintiff, J. E. Foster, through his guardian, Mary A. Chase, and Cora B. Foster, for herself, contracted to sell and did sell to defendants

J. W. Turney and J. H. Eoff the tract of land described in plaintiff's petition, for the sum of $3 per acre, aggregating the total sum of $1080; that by the terms of sale one-half of this amount was to be paid in cash, and the other evidenced by a note executed by Turney and Eoff, with a vendor's lien on the land to secure the payment thereof. This sale is alleged to have been made on the 15th of December, 1887; and that in the probate court of Harris County, where the matter of the guardianship of J. E. Foster was pending, on the 21st of March, 1887, a report of sale was made and was approved by the court, and the guardian ordered to make a proper conveyance to Turney and Eoff.

The petition then goes on to allege that in pursuance of said trade a deed was made and tendered to the defendants, and that defendants paid, as a part of the cash consideration, the sum of $287.50, and refused and failed to pay the balance of said purchase money, and refused and failed to execute and deliver the note, or if the same has been executed and delivered it has been lost, and that the plaintiffs were at all times ready and willing to comply with the contract, and that the defendants are in possession of the land, claiming the same by virtue of their purchase from plaintiffs; that in 1889 Eoff sold all the interest that he claimed in the land to his codefendant Nat Burns, and that the latter expressly agreed and contracted, as part of the consideration of the sale, to assume the payment of the amount due and owing the plaintiffs by Eoff. They pray for an enforcement of this contract and for foreclosure of the vendor's lien.

On January 3, 1898, J. W. Turney and Nat Burns filed their second amended original answer, setting up a general demurrer, general denial, and plea of not guilty, and specially pleading:

First. That if any such sale as that alleged in plaintiff's petition was ever made, which fact is denied, the plaintiffs, on or about November 1, 1887, sold said land to said Turney and Eoff, authorized them to take immediate possession and occupy, use, and improve it as their own, agreeing, on or before December 6, 1887, to make, execute, and deliver to said Turney and Eoff a warranty deed conveying a good, clear, and perfect title to said land, the said Turney and Eoff agreeing to execute a note for $540 and deposit same and $540 in money in the First National Bank of Comanche, to be delivered to plaintiffs after they had executed and delivered said deed; that defendants performed their part of said contract, and believing the plaintiffs would perform theirs, took possession and in good faith made improvements, paid taxes and part of the purchase money. About August 7, 1890, Nat Burns purchased from Eoff, one-half of said land, and he and said Turney made other valuable improvements thereon; that plaintiffs did not have and have not now any title to said land, and were and are wholly unable to perform their part of said contract, and in the event the court should find that such a contract was made, defendants pray that it be rescinded and that they have judgment for said taxes, purchase money, interest, improvements, etc.

Third. That Cora B. Foster, representing that she owned said land,

about November 1, 1887, sold same to J. W. Turney and J. H. Eoff and authorized them to take immediate possession and improve same, agreeing and assuring them that she would, on or before December 6, 1887, execute to them a warranty deed conveying a good, clear, and perfect title, the said Turney and Eoff to execute a note for $540 and deposit same with $540 in money in the First National Bank of Comanche, to be delivered to said Cora B. Foster when her said deed was so executed and delivered. Said Turney and Eoff performed their part of said contract, and believing that said Cora B. Foster would perform hers, and without any notice of any right, title, or interest of J. E. Foster in said land, and without any notice that said Cora B. Foster had parted with her interest therein, they, in good faith, paid taxes and made valuable improvements aggregating $———, and about August 7, 1890, Nat Burns purchased from J. H. Eoff one-half of said land, and he and J. W. Turney in good faith paid taxes and made other improvements thereon aggregating $———; that said note and $287.50 of said deposit was received by Cora B. Foster as part payment for said land; that said Cora B. Foster never did execute to defendants said deed, and that, since paying said purchase money, taxes, and making said improvements, they have been informed and charge that Cora B. Foster only owned at the time of her said sale to defendants Turney and Eoff a life estate in one-third of said land, and that she is (not) unable to convey to defendants a greater title; that the consideration already paid by defendants is more than sufficient to pay for Cora B. Foster's interest in said land, at least to the extent of said purchase money paid, taxes, and improvements; that defendants made said improvements and paid said taxes and purchase money in ignorance of any claim, title, or interest of J. E. Foster in and to said land, all of which was known to said J. E. Foster at the time, and he stood by and received the benefits thereof, and is estopped from setting up any title to said land, without first accounting to defendants for said taxes, purchase money paid, and improvements; and defendants ask a recovery of Cora B. Foster's interest in said land, and that said land be partitioned and defendants' rights to said improvements be respected, or that they recover for said taxes, purchase money, interest, and improvements, etc.

On December 17, 1897, plaintiffs filed their second supplemental petition, which set up a general demurrer, special plea that J. E. Foster was a minor until 1894, and alleged a sale to defendants the same as in the second count of plaintiffs' said petition.

Plaintiffs by supplemental petition denied any of the allegations of defendants' answer, but admitted that they received the sum of $287.50, paid by the defendants, but they have refused to further comply with their contract to purchase, and they tender deed from Mary A. Chase, former guardian of J. E. Foster, and they also tender deed executed by themselves to these defendants for the land in controversy.

Judgment was rendered dismissing the suit as to William Burns, and that the plaintiffs recover of the defendants Turney, Nat Burns, and

Eoff the land and premises sued for, giving a description thereof, and in favor of J. W. Turney for the sum of $500, against the plaintiffs for the value of the improvements placed on the land, and in favor of Nat Burns for the sum of $287.50 and legal interest from the time it was received by the plaintiffs as part of the purchase money, and also the further sum of $70 as the value of the improvements placed on the land by him, declaring said sums to be a lien on the land.

It is from this branch of the judgment that the plaintiffs have appealed. They make no complaint of the judgment in their favor for the land in controversy, but contend that, under the facts and the law as applied thereto, the defendants stand in the attitude of defaulting vendees, and that the plaintiffs were entitled to recover the land without being charged with that part of the purchase money received and for the value of the improvements placed on the land by the defendants.

There are facts in the record which, in our opinion, support the judgment of the court below. It appears from the evidence of the defendant J. W. Turney that he and J. H. Eoff, in October or November, 1897, purchased the land from Mrs. Cora B. Foster, one of the plaintiffs, through her agent W. C. Burns; that no contract or trade was ever made concerning the purchase of the land with Mrs. Mary A. Chase, the then guardian of J. E. Foster, nor was any trade ever made with J. E. Foster, but, upon the contrary, that at the time of the contract to purchase they believed that Mrs. Cora B. Foster was the sole owner of the land, and Burns as her agent represented to them that she had a good title to the land and would furnish them a warranty deed therefor. The purchase price agreed upon was $1080, one-half cash and the balance represented by a note payable twelve months after date. This amount was to be paid and the note delivered to Mrs. Cora B. Foster when she should execute and deliver to the defendants a warranty deed conveying a good and valid title to the land. Upon this branch of the case, he testified: "We were to pay for said land $540 cash and execute our note for $540 payable twelve months after date, said money and note to be deposited by us in the First National Bank of Comanche, Texas, to be delivered to Mrs. Cora B. Foster when she had executed and delivered to us a warranty deed conveying to us a good and valid title to said land. Mrs. Cora B. Foster wrote to W. C. Burns accepting said trade, and told him to tell us to go on the place and improve it, and that the deed would be forthcoming in due time. She was to perfect her title to said land and deliver said deed in December, 1887. By the terms of our contract we were to get a good and perfect title to said land and Mrs. Cora B. Foster was to execute us a warranty deed therefor, and the purchase money and note we deposited in said bank were not to be delivered to Mrs. Foster until after she had made us said title and deed. At the time of the purchase we deposited in the bank $487.50 and a check for enough to make up the balance of the $540 in cash, but there was something the matter with the check and the bank would not receive it, but the check was afterwards collected by J. H. Eoff and the money deposited

in the bank to make up the sum of $540. The money was deposited under our contract, by Mr. Eoff. It remained in the bank over the time for the deed to be delivered, and Eoff drew out all except $287.50, and said he would replace it when the deed came. I paid no part of the $287.50, Eoff paid it all, and that amount is all that has ever been paid on the land. We moved upon the land fifteen or twenty days before said payment was made by us. We went upon the land because we bought it from W. C. Burns, the agent of Mrs. Cora B. Foster. We took possession of the land about November 1, 1887." And in November and December, 1887, he testified that he made the improvements for the value of which he recovered judgment; and further said that, "at the time said purchase money was paid, and the time the improvements were made, I did not know that J. E. Foster had or claimed any interest or title in said land. We did not know of the partition decree in the estate of J. E. Foster, deceased, in Harris County [the J. E. Foster here spoken of is the father of the plaintiff, J. E. Foster], allotting said land to J. E. Foster, and we did not know that Cora B. Foster had in any way parted with her title or interest in said land. We did not purchase the land from J. E. Foster or from his guardian, Mary A. Chase, but we purchased from Mrs. Cora B. Foster, who was acting through her agent W. C. Burns, and at the time we made the improvements and paid the purchase money we were assured by W. C. Burns that she had a good and valid title to the land, and that she would make us a warranty deed conveying a good and perfect title, and upon this belief we paid the purchase money and made the improvements in good faith, believing that Mrs. Foster would carry out her contract. We did not know of any defects in the title at the time we purchased and made the improvements and paid the purchase money, and did not agree to take such title as Mrs. Foster could give, but on the contrary we made special inquiry of Burns, Mrs. Foster's agent, as to the title, and he told us the title was perfectly good. No deed was ever delivered to us, but one was executed and deposited in the First National Bank of Comanche, Texas. At the time the improvements were made a deed had not been sent to the bank at Comanche, Texas, and had not been delivered to us. It was some time after that, in March, 1888, a deed was sent to the bank, and this deed, it appears, was one made by Mary A. Chase. I think that the deed remained in the bank until the following fall. Mrs. Foster sent for it because some other parties were claiming the land or that the land was involved in litigation. Mrs. Foster has never executed and delivered the deed to us or to anyone for us, and she has never returned the purchase money or note to us, and we do not know where said note is, and we have never paid it." And he further states, that "I claim said land by reason of possession thereof and by reason of my contract with Cora B. Foster." Then states that the defendants paid the taxes on said land since 1887.

It appears from the facts that in 1890 Nat Burns purchased the interest of J. H. Eoff in the land, and, in this connection, we think the

facts in the record, together with the transfer from Eoff to Burns, conveyed to Burns such interest and right as Eoff had in the land.

Burns testified to facts which in effect showed that he in good faith purchased the land, and in good faith placed the improvements thereon for which he recovered judgment, believing at the time that Mrs. Cora B. Foster had the title, and not knowing of any interest in J. E. Foster.

It appears from the facts that the defendants Turney and Burns have, through tenants, been in actual possession of the land in controversy since the purchase from Mrs. Foster, and that the improvements placed by them upon the land were worth the value stated in the judgment, and that plaintiffs have received as a part of the purchase price on said land the sum of $287.50 which was paid by Eoff, and that Mrs. Foster has never executed a title or deed to the land, as testified to by defendant Turney; but that, upon the trial, the plaintiffs did tender to the defendants a deed to the land. The land was in 1854 patented by the State to John Bollinger. Plaintiffs claim to deraign title under a deed executed by a number of persons who claim to be the heirs of the original grantee.

There is no evidence whatever in the record establishing the fact that these parties are the heirs of John Bollinger.

The court, on the trial of the case, excluded certain deeds offered by the plaintiffs, executed subsequent to the time of the deed executed by these pretended heirs, of which ruling the plaintiffs complain, but in the view that we take of the case it is unnecessary for us to decide whether the court erred in these particulars. The court did in fact render judgment for the plaintiffs for all of the land in controversy; consequently the plaintiffs should not be heard to complain of the ruling of the court in excluding certain deeds in their line of title, because they have recovered title, and they have recovered all that they could have recovered if these deeds had been introduced. But the contention is, that if the deeds had been admitted it would have had a tendency to establish the fact that the plaintiffs had a good and perfect title to the land, and consequently the defendants would not have been excused in refusing to receive and accept the deed tendered to them conveying title under the contract of purchase that they had entered into.

There might possibly have been some force in this contention if the plaintiffs had connected themselves with the sovereignty of the soil; but as said before, they failed to prove title from the original grantee. It is true the record shows that they introduced in evidence a deed executed by persons who claimed to be the heirs of the original grantee, but there is not one word of evidence in the record establishing this fact. The contract, as testified to by Turner, which was entered into for the purchase of the land, and which we must take to be true for the purposes of this appeal, has a tendency to support the judgment,—shows that the agreement was that Mrs. Cora B. Foster was to furnish and deliver to the defendants a good and perfect title to the land by warranty deed *before* the defendants would be required to pay the purchase money, or become bound therefor. The heirship of these parties under whom the

plaintiffs claim, who pretend to be the heirs of the original grantee, was a fact necessary to be established before the defendants should be required to accept the title offered by the plaintiff, Mrs. Foster. There is no presumption of law that they were heirs, nor neither does the recital of that fact in their deed establish their heirship, and the defendants would not be required to accept the title of parties claiming to be the heirs, upon the mere assertion of those parties that such was the fact. Heirship from the original grantee in this case was a link in the plaintiffs' title, and if it was missing, or in other words, not established, it would be as complete a hiatus in the chain of title as would be the want of a deed conveying the interest of some one connected with the sovereignty of the soil.

The plaintiffs contend that the contract under which the defendants went into possession of the land was executed, and that they could not for that reason resist the payment of the purchase money.

In view of the testimony of the witness Turney, we do not so regard the contract. It was not executed, nor is there any written evidence thereof, but the conditions upon which the defendants would become liable were not performed by the plaintiffs, because they have never executed any conveyance of the land in the terms agreed upon, as shown by the defendants' evidence. According to the facts, the defendants only became bound when Mrs. Foster would deliver to them a warranty deed, conveying a perfect title. This was a prerequisite to her recovery, and her failure in this respect, if established clearly, would release the defendants.

It is also contended that, as the defendants have been in actual possession of the land for more than ten years, their possession would inure to the benefit of the plaintiffs, and that, having acquired title by virtue thereof, the defendants would be bound under the contract and would occupy the position of defaulting vendees, who should lose the purchase price already paid, together with the value of the improvements that they placed on the land.

Under the facts as found there is no privity between the defendants and the plaintiff J. E. Foster, and their possession would not inure to his benefit. As to the plaintiff Mrs. Cora B. Foster, it is clear that it was never contemplated, when the contract was entered into, that the possession of the defendants would ripen into a title for her benefit, although she might refuse and fail to execute the character of deed called for in the contract and to tender them a perfect title, as then agreed upon and contemplated by the parties. Her representation, through her agent Burns, that she had a good title to the land, and misleading the defendants in that respect, and leading them to believe that such was the case when they entered possession, which the facts show to be false, should be regarded in law as a fraud, and, such being the case, their possession would not inure to the benefit of Mrs. Foster.

It is contended that the court erred in rendering judgment in favor of defendant Burns for the amount of consideration that had been pre-

viously paid by his vendor Eoff.   The facts show that this consideration
was received by the plaintiffs, in fact it is admitted in their pleading.
It is true that there was no express agreement between Eoff and Burns,
at the time of the transaction between them, that Burns should acquire
the right to the cause of action that Eoff might have against the plain-
tiffs for the $287.50 paid by him as part consideration for the land; but
it is believed that, under the facts, it was the intention of Eoff and
Burns that Burns should succeed to whatever rights Eoff might have
arising from the transaction in the purchase of the land from Mrs.
Foster.   Besides, we do not believe that there was any error in the judg-
ment in this respect, because Eoff was a party to the judgment and
would be bound by it.   If he suffered judgment to go in favor of Burns
against the plaintiffs for a sum which he might be entitled to, it would
estop him from asserting against the plaintiffs, in any subsequent liti-
gation, a recovery of that sum.   Plaintiffs, if not indebted to Burns for
the sum received, would be due that amount to Eoff, and if, in a suit
where that sum was sought to be recovered by Burns, Eoff was a party
to that suit, where he could and should have urged his claim, if any, and
failed so to do, he would be bound by the judgment that was rendered
in favor of Burns.   That sum was in litigation,—it was a matter of con-
troversy before the court, and the right of Eoff, if any, should have been
urged, and the failure to do so would estop him from ever asserting it
against the plaintiffs.   Consequently, such being the case, a recovery
in favor of Burns, although he might not be entitled to that amount,
would not injuriously affect the plaintiffs.

It is also contended that, as the defendants have been in possession of
the land and enjoying its use and occupation, the court erred, in ren-
dering its judgment, in not charging them with the value of that use.

There is no pleading nor evidence in the record on behalf of the plain-
tiffs asserting any claim of that character.   If the plaintiffs had desired
to have charged the defendants for the value of the use and occupation
of the premises, they should have made some claim of that character in
their pleadings, which was not done.

It is also contended that the judgment against the plaintiff J. E.
Foster is erroneous, because at the time that the purchase money was
received he was a minor.   A sufficient answer to this is that he did not
plead his minority in answer to this branch of the defendants' case.   He
did not claim by supplemental petition or any pleading that he was
exempted from liability because of his minority, and the only instance in
which minority was pleaded was in answer to the defendants' plea of
limitation.   In replying to the right asserted in the answer of the
defendants claiming limitation, J. E. Foster pleaded that he was a
minor, but he nowhere pleads minority in defense of any cause of action
asserted by the defendants on a moneyed demand.

An objection is urged to the ruling of the court in permitting the
defendants to file a trial amendment after judgment was rendered.   The
bill of exceptions upon this question shows that the court sustained a

demurrer of the plaintiffs to the defendants' answer setting up failure of title upon the part of the plaintiffs. The explanation appended to the bill of exceptions shows that, upon this ruling, the defendants asked leave to file a trial amendment. The court granted the leave, but stated that it could be filed later on and proceeded with the trial, and did subsequently permit the defendants to file the trial amendment in which specific objections were urged to the title tendered by the plaintiffs.

If we could concede that it was irregular for the court to permit a trial amendment to be filed after the judgment, we think, under the facts, that no harm resulted to the plaintiffs from the action of the court in this respect. The facts stated in this connection do not show a surprise upon the part of the plaintiffs; but the explanation appended to the bill of exceptions shows that they were apprised of the ruling of the court upon that question, and that the right, before the trial, was given to the defendants to file the trial amendment, and from anything that is shown to the contrary, it appears that the plaintiffs may have acquiesced in this course.

The only remaining question that we further desire to notice is, whether the facts present a state of case in which the defendants were entitled to hold the plaintiffs responsible for the value of the improvements put upon the land and the purchase money paid by them. We regard these questions, in the main, as already decided by what has been previously said; but in further consideration, we are clearly of the opinion that there was no error in the judgment in this respect. The plaintiffs have recovered the land, and, such being the case, they should clearly be held responsible for the improvements placed thereon by a vendee who is not in default, and for the consideration that had been previously advanced as a part of the purchase price. The plaintiffs, under the facts of this case, ought not to be entitled to recover both the land and the improvements and to retain the purchase price, when it is clear under the evidence that they were in default, and not the defendants. It is true that no title to the land had been shown in Mrs. Cora B. Foster, but, by reason of the false representations made by her concerning her title to the land and inducing the defendants to go into possession and make improvements, would hold her responsible for the cost of those improvements and the consideration that she had received, especially in view of the fact that she had recovered a judgment for the land. If we concede that J. E. Foster was not a party to that contract and was not a party to the fraud perpetrated upon the defendants, he would still be liable for the value of the improvements and for the purchase price received by him. The plaintiffs in their petition admit that they received $287.50. Consequently, having received this consideration, he would be as much bound therefor as Mrs. Foster, upon a recovery of the land; and, as to the claim for improvements, he having recovered title, he should he held responsible for the value of the improvements put upon the land, because it appears that they have

enhanced the value of the land, and they were placed there by the defendants in good faith, believing that they were acquiring a good title to the land.

Those assignments of errors that are not specifically noticed in the opinion do not present any reversible error. Therefore, finding no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.