**KRAUSE et al. v. HARDIN et al. (No. 6391.)**

(Court of Civil Appeals of Texas. San Antonio. April 28, 1920. Rehearing Denied May 26, 1920.)

**I. Adverse possession ⟨⇒68 — Possession of land not described in deed as intended gives title.**

Actual adverse possession of the land in controversy for more than 20 years gives title to the land, though the deed under which possession was originally intended to be taken described a different tract of land.

**2. Quieting title ⟨⇒44(2)—Quitclaim to another irrelevant where plaintiffs have title by adverse possession.**

In suit to quiet title, where plaintiffs established title by adverse possession, a quitclaim deed given by one of the defendants to another conveying her interest as heir of the common source of title is irrelevant.

**3. Quieting title ⟨⇒44(2)—Agreement affecting land not claimed is immaterial.**

In a suit to quiet title to land which plaintiff had acquired by adverse possession, though his deed described a different tract, an agreement between defendants relating to the tract described is irrelevant and immaterial.

**4. Adverse possession ⟨⇒110(1)—Defense- to trespass to try title without confession and avoidance.**

Under the statute making possession of land under certain circumstances a perfect defense to trespass to try title if pleaded and proved, such possession is a defense, though not pleaded by way of confession and avoidance.

**5. Adverse possession ⟨⇒31—Possession sufficient notice to start statute running.**

Actual possession and cultivation of the land in controversy is all the notice required to start the running of the 10-year statute of limitations, whether the possessors had any deed to the land or not, and whether the record owners knew of their own interest.

**6. Limitation of actions ⟨⇒187—Privilege of infancy or coverture is waived by failure to plead.**

Infancy and coverture as an avoidance of the bar of limitations are personal privileges which are waived by a failure to plead them.

**7. Reformation of instruments ⟨⇒2—Mistake in giving grantee possession of land not described does not warrant correction of field notes.**

Where deeds correctly described a tract of land in accordance with the field notes, but by mistake the grantor put the grantees in possession of a different tract, and such possession was retained long enough to give title to the tract, there was no basis for a correction of the field notes.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by Louis Krause and others against Martha Hardin and others to remove a· cloud on title and to correct a mistake in deeds. Judgment for defendants, and plaintiffs appeal. Reversed, and judgment rendered for plaintiffs.

Guinn & McNeill, of San Antonio, for appellants.

S. D. Hopkins, of San Antonio, for appellees.

FLY, C. J. This is a suit instituted by Matilda Krause, joined by her husband, Louis Krause, and L. W. Wilson, against Martha Hardin, her husband, T. H. Hardin, and Carrie Hardin Cornelison and her husband, Richard Cornelison, the name of the last-mentioned woman having been changed, on some ground not disclosed, from that given to "Carry Hardin Cornelison Vinson, Jr.," seeking to remove cloud from the title to a certain 100 acres of land in Bexar county and to correct a mistake and misdescription in certain deeds, and in the alternative for the value of improvements made in good faith. After a lengthy pleading of facts, appellees prayed for "judgment for the title and restitution of the above-described property," for damages, costs, and general and special relief, and filed a cross-action in tres-

pass to try title. A verdict was instructed, and the jury in response returned the following verdict:

"We, the jury, find against plaintiffs and in favor of defendants for title to the property herein in controversy, and we further find against defendants on their cross-action."

On that verdict the court rendered judgment in favor of Martha R. Hardin and her husband, T. H. Hardin, and Carrie Hardin Cornelison Vinson, Jr., and her husband, W. M. Vinson, Jr., for the land in controversy; that they take nothing on their cross-action and recover all costs.

The first assignment of error assails the action of the court in overruling certain exceptions, which were probably intended as special exceptions, to the answer of appellees, but which were so general as to be nothing more than a general demurrer. The first is that the answer states that appellants claim the property through appellees because the allegation is irrelevant and states no defense. The second is that the answer states no legal defense to appellants' special claim of title. The answers are not subject to the objections, which are vague and indefinite, and the assignment of error is overruled.

The common source of title was James H. Coker, who executed a will in which he bequeathed to his son James M. Coker 40 acres of land lying between the land of said James M. Coker and the land of A. Maltsberger; to his daughter Martha R. Hardin 100 acres of land in survey 80, and known as lot No. 1, adjoining Z. F. Autrey tract on west side; to his daughter Ruthasun Maltsberger 100 acres of land in survey 80, known as lot No. 4, adjoining the tract of Julia E. Kelley; and to his son John H. Coker about 187 acres and other real and personal property possessed by him, "provided he shall take care of and provide a comfortable home and other necessaries that may be required by my wife, Josey Ann Coker, during her natural life, or so long as she remains unmarried, provided also that my son, John H. Coker, shall pay all just debts that I may be owing at my death." The testator's brother, N. B. Coker, and his son John H. Coker were appointed independent executors of his estate. The will was dated October 3, 1888, the testator died on October 2, 1892, and his will was probated on January 21, 1893. John H. Coker took charge of the estate as executor. On March 18, 1896, John H. Coker, independent executor of the estate of James H. Coker, deceased, in consideration of $900, sold to Leopold Fincke 100 acres of land out of the estate; it being recited in the deed and testified to by John H. Coker that the sale was made to obtain money with which to pay off a certain sum secured by a mortgage on the land conveyed, executed by the deceased, James H. Coker, in June, 1892, a few months before his death. The executor intended to sell to Fincke the lot known as 1A, described in the will as lot No. 1, and given to Mrs. Hardin, and he placed Fincke in possession of that tract, but the description by field notes was of lot No. 4, belonging to Mrs. Maltsberger. This mistake was carried by Fincke into the deed made by him to R. F. Pipes, who took possession thereunder of lot No. 1, and in the same way it passed from Pipes to the Krauses, who also took possession of lot No. 1. Since 1896 parties claiming under the deed to Fincke by the executor in 1896 have held undisturbed possession of lot No. 1. Appellants sought to correct the description so as to conform it to the actual land sold. While living, James H. Coker made, executed, and delivered to John H. Coker a deed to 163 acres which some three years before he had named in his will as a bequest to John H. Coker. In September, 1896, all of the heirs of James H. Coker, deceased, among the number Mrs. Hardin, ratified the sale by John H. Coker to Fincke, and one of the notes secured by vendor's lien was given to Mrs. Hardin and accepted by her as her portion of the estate of her father. The misdescription of the land was never discovered until Krause sought to sell to L. W. Wilson, probably in 1915.

Appellees introduced in evidence a document, dated January 2, 1889, executed by James H. Coker, deceased, to Martha R. Hardin in which he conveyed to her 100 acres of land to be held by her during her life and then to go to her heirs born or to be born. Appellees also introduced in evidence a quitclaim deed by the Hardins, which was executed to John H. Coker on January 10, 1893, to all interests held by them in the estate of James H. Coker, deceased. Mrs. Vinson is the only offspring of Mrs. Hardin. The latter swore that the deed in trust to the 100 acres of land was delivered to her by her father, but was returned to him by her, in order that he might convey the title to her unincumbered with a trust. He did not make such a deed and did not return the other deed. Mrs. Hardin got the original deed after her father's death. Mrs. Carrie Hardin Cornelison Vinson, Jr., only child of Mrs. Hardin, was born on September 11, 1896, several months after Leopold Fincke had gone into possession of the land in controversy.

Appellants pleaded three, five, and ten years' limitation in replication to a cross-action in trespass to try title filed by appellees. Disability of marriage or infancy was not pleaded by appellees in answer to pleas of the statute of limitations by appellants. It was admitted by appellees that one of the appellants, Matilda Krause, who held title from her husband, "is now, and with those under whom she claims for the last 20 years has been, in actual peaceable possession of the tract of land sued for herein by metes and bounds." The evidence showed without attempt at contradiction that the possession was not only peaceable, but was adverse to the whole world.

Pipes bought the land in 1897, took possession of it, and put the tillable land in cultivation. The land was fenced. Pipes raised crops on the land for five years, and then sold it to Krause. He says: I claimed the land as my own against all persons." No one ever disturbed his possession. The whole of the 100 acres was under fence, and all the tillable parts of it were put into cultivation by Pipes. Krause bought the land in 1902 and went into immediate possession of it. All the taxes were paid by Pipes and Krause, and the latter held possession adverse to every one all the time until this suit was instituted in 1919.

[1] The evidence fails to disclose that Mrs. Hardin was ever in possession of the land in controversy, although it is stated in the brief of appellees that Mrs. Hardin was in possession of it in 1893, 1894, and 1895. If that had been proved, the fact remains that Fincke took possession of the land in the first part of 1896, and that adverse possession has been held of it from 1897 to the present. How the evidence as to limitations was avoided does not appear from the record, nor does the brief of appellees reasonably account for it. The trial judge filed no conclusions of fact and law, and we cannot determine upon what theory he instructed a verdict for appellees. If he did so on the ground that appellants went into possession of a tract of land not described in their deed, the answer is they went into possession of the tract of land in controversy and held it adversely, using and cultivating it as their own for over 20 years, and the fact that they had no deed to the land could not affect their title by limitations. They went into possession of land which was pointed out to them by their vendor, and which he, as well as they, honestly believed had been faithfully described in the deed. We may ignore the deeds altogether and still the land belongs to appellants, even if it be admitted, as claimed by appellees, that the adverse possession of the land began after the birth of Mrs. Vinson; that is, when it was sold by Fincke to Pipes.

[2] Mrs. Hardin and her husband made a quitclaim deed to John H. Coker on January 10, 1893, releasing all claims they might have to 187 acres of land "as well as in other interests to and included in, by, and under written will or wills made by James H. Coker, late of Bexar county, Texas, dec'd." This was introduced by appellees over the protest of appellants. It tended to show, if anything, that Mrs. Hardin had parted with all the interest she had in her father's estate as evidenced by a will made by him. We fail to understand why appellants should have objected to it. It had no possible effect on the issues in the case, and should not therefore have been admitted in evidence.

[3] Some time in September, 1896, all of the heirs of James H. Coker, deceased, among the number T. H. Hardin and Mattie R. Hardin, entered into a written agreement wherein it was recited that James H. Coker had given a note for $500 to one S. S. Thomas, and secured its payment by a deed of trust on 100 acres of land out of his estate; that the maker of note and mortgage had died without providing in his will for the payment of the debt; that John H. Coker, executor, on March 18, 1896, sold the land to Fincke for $736 cash and a vendor's lien note for $164.64, due seven months after date, and it was agreed that the note for $164.64 be transferred and delivered to Mattie R. Hardin, as her part out of the estate of her father, and each and all of them released John H. Coker from all liability for his acts in connection with the estate. The evidence shows that the agreement was not acknowledged for ten years after its execution, and the only evidence of its record is the statement of John H. Coker that he did not know where the document was, but that it was "in the abstract and records," whatever that may mean. However, not being acknowledged until 1906, if recorded, it could not have been before September, 1906. It could have had no effect except to show that Mrs. Hardin had released all her claim to any part of her father's estate and could in no wise have affected the interest of Fincke, Pipes, or Krause to the land in controversy. They were not parties to the agreement, had no interest in it, and it could not affect their adverse possession of 1A, because it was in regard to lot 4A, which they have never claimed. The parties to the agreement were referring to a mortgage on lot 4A, which appellees admit was the lot on which the mortgage was given by James H. Coker, and not to lot 1A, which was in the possession of Krause and vendors. If any effect is given to the agreement in this case, it would be that it had conveyed the life interest of Mrs. Hardin in lot 1A to her brother, and would preclude her from any recovery in this suit.

[4] Appellees contend that, if appellants pleaded limitations as "defensive matter" to an action of trespass to try title, such pleading would "have no force or effect in confession and avoidance"; but limitation is a defense to an action of trespass to try title without reference to any plea in confession and avoidance. The statute makes possession of land for three, five, or ten years under certain circumstances a perfect defense, with no conditions except that either be pleaded as prescribed by statute and then proved.

[5] Possession of the land in controversy was all the notice required to start the running of the statute of ten years, whether the possessors had any deed of conveyance to the land or not. If Mrs. Vinson knew nothing about having any interest in the land until this suit was instituted, that could have no effect on the running of the statute.

[6] Infancy and coverture are personal privileges, and can and will be waived by a failure to plead them, and any pleading seeking to avoid a plea setting up the statutes.

of limitation should state such facts as show that the statute could not have run. Infancy and coverture were not pleaded in bar of the statute nor are they or either of them urged in the brief of appellees. Campbell v. Wilson, 23 Tex. 252, 76 Am. Dec. 67; Foster v. Eoff, 19 Tex. Civ. App. 405, 47 S. W. 399.

[7] The evidence showed that there was no mistake made as to the description of the land placed in the deed executed by John H. Coker to Fincke, but that the field notes were taken from the mortgage given by James H. Coker to Thomas. The only mistake made was that by which John H. Coker placed Fincke in possession of the tract of land not described in the deed. It follows that there was no basis in the evidence upon which to correct the field notes.

Because the evidence showed without controversy that appellants had title to the 100 acres of land known as lot 1A by limitation of ten years, the judgment of the trial court is reversed, and judgment here rendered that appellants recover of appellees the said land and be quieted in their title thereto, and that appellants recover of appellees all costs in this behalf expended.