## SPARKMAN v. DAVENPORT.

(Court of Civil Appeals of Texas. Amarillo. Oct. 18, 1913. Rehearing Denied Oct. 18, 1913. Additional Motion for Rehearing Denied Nov. 8, 1913.)

1. VENDOR AND PURCHASER (§ 140*)—CONTRACT—CONSTRUCTION—ABSTRACT OF TITLE.

A contract to convey land provided in the first paragraph that it was conditioned on the vendor procuring and delivering abstracts of title, and, if the title, as disclosed thereby, was not good, the purchaser should state his objections in writing, and, if they could be removed within a certain time, the vendor should remove them at his own expense. The second paragraph provided that, if title, as shown by the abstract, was not good, and the objections were not removed, the contract should become void, and the purchaser "shall be entitled to a return of all property paid by him by reason of this contract," and the third paragraph provided that as an evidence of good faith the purchaser has executed a note for $3,000 in favor of the vendor, with the understanding that, if the vendor tendered to the purchaser a good and perfect deed, "and does in fact deliver a complete abstract of title to said property, and the abstract shows good title to said land," and the purchaser fails or refuses to perform the obligations imposed, then he shall forfeit to the vendor the aforesaid sum of $3,000 as evidenced by the note as liquidated damages. Held, that under the third paragraph construed with the other provisions the vendor, in order to claim the $3,000 as a forfeiture, must tender an abstract which in fact shows a good title, even though the abstract was corrected by the vendor on demand; the fact that a good title existed aliunde the abstract not being sufficient.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. § 140.*]

2. CONTRACTS (§ 143*)—CONSTRUCTION.

A contract should be construed as a whole.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 723, 743; Dec. Dig. § 143.*]

3. CONTRACTS (§ 318*)—CONSTRUCTION—FORFEITURE—POLICY OF LAW.

Forfeitures are not favored, and, if the language of a contract is fairly susceptible of an interpretation which will prevent forfeiture, such construction will be adopted.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1508–1527; Dec. Dig. § 318.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**4. ABSTRACTS OF TITLE (§ 1*)—DEFINITION.**

An "abstract of title" is defined as a statement in substance of what appears in the public records affecting title to land, together with a statement in substance of such facts as do not appear upon the public records which are, however, necessary to perfect the title—citing Words and Phrases, pp. 47, 48.

[Ed. Note.—For other cases, see Abstracts of Title, Cent. Dig. § 1; Dec. Dig. § 1.*]

**5. VENDOR AND PURCHASER (§ 140*) — ABSTRACT OF TITLE—SUFFICIENCY.**

A deed contained in an abstract of title which recites that grantors are the only heirs of the immediately preceding grantee and title holder upon the public records would not be a sufficient showing to a prudent examiner of the records that the purported heirs are in fact heirs.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. § 140.*]

**6. VENDOR AND PURCHASER (§ 239*)—BONA FIDE PURCHASERS.**

One cannot be an innocent purchaser as against a devisee under a valid outstanding will.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. § 239.*]

**7. EXECUTORS AND ADMINISTRATORS (§ 137*)—CONVEYANCE BY EXECUTOR—PROBATE—NECESSITY.**

An executor could not convey land located in Texas, though the will was recorded in the deed records, if it was not regularly probated in this state.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 557–559, 606½; Dec. Dig. § 137.*]

**8. VENDOR AND PURCHASER (§ 140*) — ABSTRACTS OF TITLE—SUFFICIENCY.**

An abstract of title which contained a will devising testator's estate to his wife and children, subject to a life estate in the wife in certain realty, and also containing a deed to the realty purporting to have been executed by the widow of such testator, was defective as an abstract for not showing that the woman who signed the deed was in fact testator's wife, though her surname as signed was the same as testator's.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. § 140.*]

**9. VENDOR AND PURCHASER (§ 140*) — ABSTRACT OF TITLE—SUFFICIENCY.**

An abstract of title which showed that a grantee in the chain of title received title by a conveyance from his son was defective for not showing whether such grantee's wife was living when he received the deed from his son, since, if then living, she would be entitled to a half interest on such grantee's death; the abstract showing that he is dead.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. § 140.*].

**10. NOTICE (§ 12*)—NOTICE OF MARRIAGE.**

Notice of a marriage is notice of all property rights arising from such status.

[Ed. Note.—For other cases, see Notice, Cent. Dig. §§ 31; Dec. Dig. § 12.*]

**11. VENDOR AND PURCHASER (§ 134*)—BONA FIDE PURCHASER—NOTICE.**

The fact that the appraisers of an estate appraised certain land as decedent's separate estate would not be binding upon a bona fide purchaser of any interest which decedent's wife in fact had in the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 238, 250–254, 258; Dec. Dig. § 134.*]

Appeal from District Court, Collingsworth County; D. E. Decker, Judge.

Action by B. H. Davenport against W. G. Sparkman. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Stark & Stark, of Hillsboro, and Turner & Wharton, of Amarillo, for appellant. R. H. Templeton, of Wellington, and Barrett & Jones, of Amarillo, for appellee.

HENDRICKS, J. This litigation is dependent upon the construction to be given to a contract for the sale of certain land situated in Collingsworth county, providing for a forfeiture of $3,000 against the prospective purchaser in favor of the seller, and involving by virtue of this record the question of the performance by vendor of certain conditions stipulated in the contract, which, if performed, on account of the alleged default of the purchaser, the forfeiture is claimed to have been earned. The appellee, Davenport, as independent executor of the estate of M. W. Davenport, deceased, contracted on August 12, 1911, to convey to the appellant, Sparkman, sections Nos. 49 and 50, in block No. 10, H. & G. N. Ry. Co. surveys, in Collingsworth county, for the expressed consideration of $19,200, $4,000 of which, the first payment, was to be paid by Sparkman the 1st day of January, 1912, at which time the deeds were to be delivered, and deferred notes for the balance to be executed.

The provisions of the contract, germane to the solution of this cause, are as follows; the numerical paragraphing being ours:

(1) "This contract is conditioned that the party of the first part will procure and deliver to party of the second part deeds and abstracts of title to the above-described property within ten days from date, and party of the second part will then have ten days to have said abstract examined by his attorney; if the title as shown by the abstract is good and valid, then first party will make deeds to said land to each tract of land; if title as disclosed by said abstract is not good, then the second party shall procure and submit to party of the first part a statement in writing containing the objections to said abstract within ten days from the date of receiving said abstract. If said objections are of such a character that they can be cured and removed within the period of time not to exceed January 1, 1912, then said first party shall be obligated to so cure and remove said objections at his own expense, and it is hereby agreed and understood that the said party of the first part shall have sufficient time to cure the objections and resub-

mit to party of the second part for his approval."

(2) "But, if the title to said property as shown by said abstract is not good, and objections thereto are not cured and removed by said first party within the time hereinbefore stated, then the said second party shall have the right to declare this contract at an end and no longer binding on him, and same shall become null and void, and the said second party shall be entitled to return of all property paid by him by reason of this contract."

(3) "As an evidence of good faith and in earnest of this contract, the said party of the second part has this day made and executed a note for the sum of $3,000 in favor of B. H. Davenport, and due January 1, 1912, secured by chattel mortgage on certain mules in Jack county, Texas, with the understanding that, if the said first party does make and tender to the party of the second part a good and perfect deed to said land conveying to the said second party, for the price and on the terms hereinbefore stated, and does in fact deliver a complete abstract of title to said property, and the abstract shows good title to said land within the time hereinbefore stated, and said second party fails or refuses to keep and perform the obligations herein imposed upon him by this agreement and make the cash payment of $4,000, on January 1, 1912, as provided in said deed for cash, then and in that event he shall forfeit to said first party the aforesaid sum of $3,000, as evidenced by the said promissory note, as liquidated damages."

The appellant, Sparkman, refused to accept the deeds alleged to have been tendered by the appellee under the provisions of the contract, and the latter recovered judgment against the former for the full amount of the penalty note provided for in said contract.

[1] Under paragraphs 1 and 2 (our enumeration) of the contract, in an action for specific performance of the contract, if the vendor complies with those provisions, and meets all objections of a material nature addressed to the abstract and title, proffered by the vendee, it may be that certain rights in favor of the vendor would accrue on the doctrine of waiver, and which appellee is attempting to apply to the whole contract—the previous question, though, is not before us and undecided. However, we think, under paragraph 3 (our enumeration) of said contract, different rights are provided for, and, though the abstract on demand may have been corrected, still, if under that provision the vendor is in default in delivering a "complete abstract of title to said property," and which does not show "good title" to the land contracted to be conveyed, the forfeiture does not exist. By its literal terms, the third provision of this contract, regarding it for the moment as distinct from the other provisions, is unequivocal in its declaration of the obligations to be performed by the vendor, which, after compliance and noncompliance by the vendee, the forfeiture is earned.

[2] The appellee asserts the rule that the contract should be construed as a whole, which when applicable necessarily governs, and insisting that the other two provisions of the contract, especially the first, are also addressed to the right of forfeiture provided for in the third provision, and the same should be construed in the light of those provisions. The first provision, it is noted, is mainly addressed to the matter of the preparation, delivery, and the time to be delivered by the vendor to the vendee of said abstract, and the time of examination by the vendee, with the advancement of objections by him to the title, with the right of correction of the abstract by the vendor, if the objections may be removed within the time limit of the contract. And further provided by the second provision, if the title as shown by the abstract is not good, and the objections are not removed, the contract is void, and the vendee will be entitled to the restoration of his money. We think the logic of appellee's position is, although not specially urged, to give him the double right: First, "If I comply with the first provision of the contract—remove all objections tendered to the abstract, whether the abstract 'in fact' is complete or incomplete, and irrespective of the character of title really shown—the $3,000 is purchase money, and I can make you take the land;" and, second, "I have complied with the first provision, and the vendee has failed to comply, having removed all objections to the contract, and I not only can treat the $3,000 as purchase money, and make you perform the contract, but in the alternative, and at my option, I can treat it as a forfeiture." When it comes to the matter of forfeiture, the contract does not say the forfeiture of the $3,000 may be declared if all objections are removed within the time specified. It says that the $3,000 forfeit note is executed as an "evidence of good faith, with the understanding that, if the said first party * * * does *in fact* deliver a complete abstract of title, and the abstract shows *good title* to said land, * * * and said second party fails or refuses to keep the obligations herein imposed upon him by this agreement and make the cash payment of $4,000, he shall forfeit the money. What does the forfeiture provision of the contract mean when it prescribes that the forfeiture note is executed with the understanding that the vendor "does in ·fact" tender a "complete abstract" which shall show a "good title" to the property? Does it mean that, if he does not "in fact" show a "complete abstract," and which fails to show a "good title," the $3,000 belongs to him? We believe the slightest analysis refutes the proposition, and that only a strained construction would sustain appellee's contention.

[3] "Forfeitures are not favored by the law, and, if the language used is fairly susceptible of an interpretation which will prevent a forfeiture, it will be so construed." Brown v. Palatine Insurance Co., 89 Tex. 595, 35 S. W. 1061. Questions of contractual forfeiture arise more commonly in cases involving insurance policies than with reference to other contracts; but we take it that the rule of construction would be the same, and, as Justice Brown of the Supreme Court said, in the same case (89 Tex. 594, 35 S. W. 1060): "The same rules of law will be applied as in the construction of contracts made between individuals under like conditions, and no greater strictness is required in the performance of the one than the other." It is true we are unable to find a case decided by our appellate courts with provisions of a similar character; however, we know that the whole undercurrent of the law upon the subject of forfeiture indicates its disfavor in the construction of statutes imposing forfeitures for violations of civic and public obligations, and in the interpretation of contracts providing for penalties for the nonperformance of same—at times abating the nominal penalty and substituting the real damage—there is a leaning of the law in all these matters against the forfeiture. If our construction of the third provision and of the whole contract as affecting the right of forfeiture is correct, a good title aliunde the abstract, as we understand the contract and the authorities, would not aid the seller. As said by the Supreme Court of Iowa, in the case of Brown v. Widen, 103 N. W. 158: "The contract called for an abstract showing good title, and nothing less than this would satisfy the condition, no matter what the vendor's real title might be. Lessenich v. Sellers, 119 Iowa, 314, 93 N. W. 348. This was a condition precedent to be performed by the vendor before he could require further action on the part of the vendee, and the burden of proof is upon him to show that he in fact complied therewith." And as further expressed in a later decision by the same court, in the case of Fagan v. Hook, 134 Iowa, 387, 105 N. W. 157: "The title may be good; but one to whom an abstract showing good title has been promised as a condition precedent is not bound to accept any evidence thereof except that contained in the abstract." And, again, as enunciated by the Supreme Court of California, in the case of Smith v. Taylor, 82 Cal. 533, 545, 23 Pac. 217, 219, 220, in passing upon a written contract for the sale of land, which contained a stipulation that certain money should be refunded if the abstract of title did not show "good title": "This abstract must show good title, or there was no sale, and in that event he was to return the money. * * * Under the contract, the plaintiff was not bound to make any investigations outside the abstract." Also, see Loring v. Oxford, 18 Tex. Civ. App. 415, 45 S. W. 395, where the same point is practically decided.

[4] Second. What is an abstract of title, and what would be a complete abstract showing a good title? The Court of Civil Appeals of the Second District (Loring v. Oxford, supra) said: "It seems that 'abstract of title' has a somewhat different meaning in different countries (Warvelle on Abstracts, §§ 4, 5, 6), and it is thus defined in Anderson's Law Dictionary, which is perhaps the most accurate definition for this country: 'A concise statement of the record evidence of one's title or interest in realty.'" Words and Phrases, under the heading "Abstract of Title," in substance quotes similar definitions. Necessarily, an arbitrary definition of that character cannot be a hard and fast rule. The facts are not developed in that opinion in the Loring-Oxford Case; but the logic of that opinion is suggestive, as applied to a contract of this character, that, although the abstract may be a complete and perfect summary of the record, however, if it fails to show "a complete or perfect title" (as in this case, if it fails to disclose a complete abstract showing a "good title"), the vendor must fail. In that case Justice Stephens, after quoting from Anderson's Law Dictionary that an abstract is a "concise statement of the record evidence of one's title in realty," further says, "Such an abstract appellee seems to have furnished, though it failed to show a perfect title," and reversed and rendered the cause.

[5] Mr. Maupin, in his valuable work on Marketable Title to Real Estate, quotes a definition of an abstract from Sugden on Vendors, as "A statement in substance of what appears on the public records, affecting the title," but in reality enlarges it by saying that: "This definition is perhaps sufficiently exact for practical purposes; but it should be remembered that there may be facts of vital importance to the title which nowhere appear of record, such as the proofs necessary to establish by descent or title by adverse possession. The abstract should, of course, show the ability to establish all such facts by competent evidence. It is customary in some localities to take the affidavits of persons cognizant of such facts, and cause them to be recorded among the land records of the county where the land lies." Of course, we are not emphasizing as a rule of duty that affidavits of a fact dehors the record should be placed of record, or that affidavits, where the matter of descent arises, is an exclusive method, exhibiting to the examiner evidence of a prerequisite substantive fact, not of record, affecting the title. Warvelle, in his work on Abstracts of Title, p. 43 (3d Ed.), under the head of "Title Conveyances by Heirs," says: "Where affidavits are resorted to to prove heirship, death of ancestor, etc., they should be well authenticated as well as positive in their averments; but,

however well framed they may be, they afford evidence of the lowest order only"—and not quoted by us on the question of the value of affidavits on matters of this kind, but as suggestive, that, where such a matter arises, or an analogous question, which we think is suggested by this record, some reasonable showing should be made in the abstract to an ordinarily prudent examiner of a necessary fact, constituent to a good title. We believe the better definition of an abstract is contained in Hollifield v. Landrum, 31 Tex. Civ. App. 193, 71 S. W. 982, as follows: "By an 'abstract' is meant a statement in substance of what appears in the public records affecting the title, and also a *statement in substance of such facts as do not appear upon the public records* which are necessary to perfect the title." A deed in a chain of title recites that the grantors are the heirs and the only heirs of a party who is the immediate preceding grantee and holder of the title upon the public records; surely such a deed in the abstract of title would not be sufficient showing to a reasonably prudent examiner that the purported heirs are heirs?

Third. If we are correct that the third provision of the contract controls with reference to the right of forfeiture, and that it is one devolving the duty upon the vendor to exhibit "in fact" a complete abstract showing a "good title," measured by this record, with the abstract proffered and the authorities quoted, should the appellee have recovered?

In this chain of title there is the will of Wm. Walter Phelps. He makes a certain devise of land to one of his children, naming him, and certain bequests of a trust fund, derivable from personal assets, to two other children, naming them, and after these things are done he devises and bequeaths "all my estate to my wife and children, share and share alike," subject to a life estate to the wife in certain real estate, mentioning it. His wife's name is not mentioned in the will, and the question as to who constitute all the children, taking the Texas land under the residuary devise, is still existent, except, of course, as to the three children specifically named as entitled to a special devise and special legacies, and who participate in the residuary devise of the Texas lands. All the children of Wm. Walter Phelps are entitled to this devise, and who are they? There is no internal evidence from the will, unless you try to argue by speculation by asserting that the three specially named beneficiaries are all the children of Wm. Walter Phelps; that, if he had any other children, he would specially have provided for them, and would not have shown partiality.

[6] You cannot be an innocent purchaser against an outstanding devisee any more than against an outstanding heir. This will was recorded in the deed records of Collingsworth county, but is not shown to have been probated in Texas. There is a mesne conveyance in this title, purporting to convey the land attempted to be purchased by Sparkman from Davenport, and signed by the three children named as the special beneficiaries in the will of Phelps, and also executed by the executors named in the will, and also by one who purports to have been the wife, and the widow then, of Wm. Walter Phelps.

[7] The executors had no power to convey the land in Texas, notwithstanding the recording of the will in the deed records, unless regularly probated in this state. Clarke v. Webster, 94 S. W. 1088; Webster v. Clarke, 100 Tex. 333, 99 S. W. 1020, 123 Am. St. Rep. 813. Their declaration in their deed that they were "the only parties who by the will of the said Wm. Walter Phelps" have any title or interest "in the lands, whether as devisees or heirs, is of very slight probative force, if any. The case of Moore v. Price, 46 Tex. Civ. App. 304, 103 S. W. 235, was one where a vendor had agreed to furnish an abstract to the vendee "showing a good and marketable title" to the land. While the judgment and opinion of the court could have been based upon the ground of an outstanding title to a part of the land which the vendor was unable to cure, however, the court did hold that a purchaser of real estate entitled to an abstract showing a good title may decline to accept an abstract containing no other proof of title by limitation than the affidavit of the owner, although full and complete, purporting to recite the facts. The case of Foster v. Eoff, 19 Tex. Civ. App. 412, 47 S. W. 403, was one passing upon an alleged agreement, where one party was to furnish another a good and perfect title to the land by warranty deed, and the court said that the heirship of certain parties under whom the vendor claims, "who pretend to be the heirs of the original grantee, was a fact necessary to be established before the defendants should be required to accept the title offered by the plaintiff Mrs. Foster. There is no presumption of law that they were heirs, nor does the recital of that fact in their deed establish their heirship, and the defendants would not be required to accept the title of parties claiming to be the heirs upon the mere assertion of those parties that such was the fact. Heirship from the original grantee in this case was a link in the plaintiff's title, and, if it was missing, or, in other words, not established, it would be as complete a hiatus in the chain of title as would be the want of a deed conveying the interest of some one connected with the sovereignty of the soil."

[8] Our decision of this matter has assumed a broader scope somewhat than the assignment and the proposition; but it is specifically raised that "there is no evidence, either by affidavit or otherwise, that the grantors in said instrument were the wife and children of said Wm. Walter Phelps, nor that they had any interest in said land," etc., and, as to the lack of showing that Mrs. Ellen Shef--

field Phelps, who signed the deed, was the wife of Wm. Walter Phelps, we think the assignment well taken, the abstract being totally devoid of any exhibition of identity, just as much so as if she recited in a deed that she was an heir to a deceased person who was the previous record holder of the title.

[9-11] Fourth. Again, this record exhibits another will of M. W. Davenport, who is a grantee in this chain of title; the will devising and bequeathing his property to certain named children and grandchildren, suggesting, of course, the marriage relation. The record and abstract is conclusive that he acquired a part of the land, section 50, after marriage; one of his sons conveyed it to him. Whether Mrs. Davenport is dead or alive, or whether she was dead or alive when M. W. Davenport received the deed from the son, the record and abstract are totally silent. Whatever the status is, notice of the marriage relation is imputed by this will and all the consequences derivable therefrom. If alive, a half interest could be hers. It is not necessary to quote the authorities that notice of the marriage is notice of property rights, whatever they may be, flowing from such status. It is true that the appraisers of M. W. Davenport's estate appraised as his separate estate sections 49 and 50 in this controversy. Such a recitation does not bind any one, if an interest should happen to be outstanding. Koppelmann v. Koppelmann, 94 Tex. 44, 57 S. W. 570. We are not concerned with the question that these objections were not raised by either attorney in passing upon the title. We think that salient matters were not presented by the abstract which were necessary to a complete abstract showing a good title, and the appellee fails in the recovery for the forfeiture, and, as they are matters which necessarily cannot be cured, the contract and abstract clearly presenting the question, our former judgment that the judgment of the district court should be reversed and rendered should stand.

Our former opinion in this case, in which different reasons are given for the reversal and rendition of this case, is withdrawn, and the motion for rehearing is overruled. The appellee has, and is granted, the right to file an additional or amended motion for rehearing.