

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXX
ATTORNEY GENERAL

Honorable J. P. Gibbs, Commissioner
Casualty Insurance Division
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-7300
Re: What constitutes an abstract plant
as such term is used in Section
21, Article 1302a, Revised Civil
Statutes, and related question?

This Department has received your request for an opinion as follows:

"Section 21, Article 1302a, Revised Civil Statutes of Texas, 1929, provides, among other things, that a title company can appoint as its representative in any county, any person, firm or corporation owning and operating an abstract plant in such county and making such arrangements for a division of premiums as may be approved by the State Board of Insurance Commissioners. In light of the above provision, we submit the following questions to you for an opinion:

"1. What constitutes an abstract plant as such term is used in Section 21, Article 1302a, Revised Civil Statutes?

"2. May the Board of Insurance Commissioners approve or revoke an arrangement with reference to division of premiums entered into between a title company and a representative, if the plant of the representative does not come within the meaning or meet the requirements of an abstract plant as such is defined or stated in answer to Question No. 1?

"In view of the fact that an abstract plant is not defined by the Title Act (Article 1302a), the Department feels that it is necessary to secure an opinion in order to clarify the matter, and in order that the Title Act may be better administered by the Board of Insurance Commissioners."

Section 21 of Art. 1302a, V.A.C.S., which is Section 21 of H.B. No. 153, Chap. 40, Acts 41st Legislature, Regular Session, 1929, page 77, is as follows:

"No commissions, rebates, discounts, or other device shall be paid, allowed or permitted by any company, domestic or foreign, doing the business provided for in this Act, relating to title policies or underwriting contracts; provided this shall not prevent any title company from appointing as its representative in any county any person, firm or corporation owning and operating an abstract plant in such county and making such arrangements for division of premiums as may be approved by the Board of Insurance Commissioners." (All emphases herein are supplied)

The caption of this Act is in part as follows:

"An Act authorizing the creation of corporations for the purpose of compiling and/or acquiring and owning abstract plants in this or any other state, and to compile and sell abstracts of titles therefrom and to insure the title to lands and interests therein and liens thereon, . . . ."

Section 1 of the ACt is in part as follows:

"Private corporations may be created for the following named purposes:

"(1)  To compile and own, or to acquire and own records or abstracts of title to lands and interests in lands; and to insure titles to lands or interests therein, both in Texas and other states of the United States, and indemnify the owners of such lands, or the holders of interests in or liens on such lands, against loss or damage on account of incumbrances upon or defects in the title to such lands or interests therein.

"Such corporations may also exercise the following powers by including same in the charter when filed originally, or by amendment:

"(2)  Make and sell abstracts of title in any counties of Texas or other states."

A careful search of Revised Civil Statutes of Texas, 1925, and all acts of subsequent legislatures up to and including the 49th Legislature, fails to reveal any statutory definition of or

reference to the words "abstract plants" other than as contained in the Act, save and except insofar as corporations may be formed for the purpose of making, compiling and owning abstracts of title to lands and liens of all character on any property or any other abstract of records in this State, or County thereof, required by law under the provisions of Section 56, Article 1302, R.C.S., 1925. It will be noted that the Article last referred to does not use the words "abstract plant." A careful search of the opinions of the Appellate Courts of Texas fails to reveal any judicial definition of the term "abstract plant."

One of the fundamental rules of statutory construction requires that a legislative enactment be construed as a whole and that all of its parts be harmonized if possible, so as to give effect to the entire act according to the evident intention of the Legislature. In accordance with this rule, in interpreting the statute, the Act in its entirety should be considered, each part in connection with every other part.

Another of the fundamental rules of construction is that where ambiguous or seemingly conflicting language is contained in the statute, the circumstances attending its passage which bear upon the legislative intent, and the state of the law at the time of its enactment, the conditions designated to be dealt with, and good intended to be accomplished and the _mischief sought to be remedied_, should all be taken into consideration.

Judge Sharp, speaking for the Supreme Court of Texas in the case of Magnolia Petroleum Company v. Walker, 83 S.W. (2d) 929, held as follows:

"No inflexible rule can be announced for the construction of statutes. However, the dominant rule to be observed is to give effect to the intention of the Legislature. Generally the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, it is proper to consider the history of the subject-matter involved, the end to be attained, the mischief to be remedied, and the purposes to be accomplished. . . . ."

It is manifest that the legislative intent as stated in the caption above referred to was to authorize the creation of corporations for the purpose of compiling and/or acquiring or owning _abstract plants_, and to compile and sell abstracts of title _therefrom_ and to _insure the title to lands and interests therein and liens thereon._

It will be noted that the purpose clause under Subsec-

tion (1) of Section 1 of the Act above referred to in pursuance of the caption authorizes private corporations to be created "to compile and own, or to acquire and own records or abstracts of title to lands and interest in lands; and to insure titles to lands or interest therein both in Texas and other States of the United States and indemnify the owners of such lands or holders of interest in or upon such lands against loss or damage on account of incumbrances upon or defects in the title to such lands and interests therein." The Legislature also authorized the additional business named in Subsection (2) supra, authorizing such corporations to make and sell abstracts of title in any county of Texas or other States.

The Appellate Courts of Texas have defined the words "Abstract of Title" as follows:

"A statement, in substance, of what appears in the public records affecting the title, and also a statement, in substance, of such facts as do not appear upon the public records but are necessary to perfect a title." Hollifield v. Landrum, 71 S.W. 979; Sparkman v. Davenport, 160 S.W. 410; Wright v. Butt, 163 S.W. 360.

It has also been defined as

"An abstract of title is a written or printed methodical summary of the documents and facts of record which affect the title to land that may be in effect. . . ." MacMillan v. First National Bank of Bowie, 119 S.W. 709.

In addition there are other Texas cases defining abstracts of title in practically similar language.

Although persuasive, in the absence of a legislative definition thereof, the term "abstract plant" has been defined by the Supreme Court of Minnesota, in the case of State v. St. Paul Abstract Company, 196, N.W. 932, as follows:

"The abstract plant consists of abstracts of title to real property in Ramsey County, taken from the official public records and assembled in books with copious indexes, together with the articles of equipment used in connection therewith. The matter contained in such books is collected from the public records, and in no manner partakes of scientific discoveries, nor are they like the manuscripts of an author, or a copyright, as contended for."

Construing the caption with subsection (1) of Section 1 of the body of the Act, it is plain that the Legislature intended to define an "abstract plant" as used in connection with the title insurance business to be "records or abstracts of title to lands and interests in lands" which might either be compiled and owned by the corporation or acquired by purchase or otherwise and owned by the corporation. These records or abstracts of title, when compiled or acquired, are to be used as the basis from which the title insurance company may determine whether or not it will issue a title insurance policy upon such lands or interests therein.

Since the Legislature has defined the term "abstract plant" without any limitation as to the area or locality to be covered by the records or the abstracts of title, the conclusion must be drawn that the title insurance company may confine its activities to any given area, no matter how small. In the course of ordinary and careful business usage as an insurer, it may, therefore, if it desires, compile and/or acquire and own only such records or abstracts of title to such lands or interests in land upon which, as insurer, it offers itself to the public at large as being willing to issue title insurance policies.

Section 2 of the Act provides in part as follows:

"Any corporation organized hereunder having the right to do a title insurance business may invest as much as fifty per cent of its capital stock in an abstract plant or plants, provided the valuation to be placed upon such plants shall be approved by the Board of Insurance Commissioners of this State." (Emphasis ours).

The words "abstract plant" appear only three times in the entire Act. First in the caption above referred to, second in Section 2, and third in Section 21. Following the rules of statutory construction above set forth it must be concluded that the term "abstract plant" as used in all three sections was intended by the Legislature to mean "records or abstracts of title to lands or interests therein," for the purpose of the regulation or the construction of the entire act.

Therefore, the qualification prescribed by Section 21 of Article 1302a, supra, is that the "representative" own and operate in the county wherein he is designated as such, an "abstract plant" as that term is uniformly used in Article 1302a, which we have defined hereinabove. In other words, the "representative" of a Title Insurance Company is not required by Section 21 of Article 1302a, to own and operate an "abstract plant" with complete records or abstracts of title to all of the lands in the county where he acts as such "representative."

Your second question is as follows:

"May the Board of Insurance Commissioners
approve or revoke an arrangement with reference
to division of premiums entered into between a
title company and a representative, if the plant
of the representative does not come within the
meaning or meet the requirements of an abstract
plant as such is defined or stated in answer to
Question 1?"

It is a well-known rule of statutory construction that
an officer or department of the State Government is only vested
with such powers as may be granted to it by either the Consti-
tution of Texas or by the Legislature of Texas. The power must
be based upon some specific delegation by either of the sources
above mentioned and power by implication will never be presumed
or implied unless it is practically indispensable and essential
to execute the power actually conferred. Creager, et al. v.
Water Improvement District 283, S.W. 151, (Com. App.).

In the case of Commercial Standard Insurance Company v.
Board of Insurance Commissioners, 34 S.W. 2d, 343 (writ refused)
which discussed some of the powers of the Board of Insurance
Commissioners, Judge Baugh wrote as follows:

". . . . . The board can exercise only the
authority conferred upon it by law 'in clear and
unmistakable terms, and will not be deemed to be
given by implication, nor can it be extended by
inference, but must be strictly construed.' 51
C.J. 56; State v. Robison (Tex. Sup.) 30 S.W. (2d)
292, 297." (Emphasis ours).

Again in the case of Board of Insurance Commissioners
v. Guardian Life Insurance Co. et al, 180 S.W. 2d 906, the
Supreme Court of Texas, citing with approval the Commercial
Standard Insurance case just quoted, lays down the rule of law
as follows:

"The board can exercise only such authority
as is conferred upon it by law in clear and un-
mistakable terms and the same will not be con-
strued as being conferred by implication."

Following such rule of statutory construction it is
necessary to look at the plain and unambiguous language of Sec-
tion 21 which provides in part:

"This shall not prevent any title company

from appointing as its representative in any
county any person, firm or corporation owning and
operating an abstract plant in such county and
<u>making such arrangements for division of premiums</u>
<u>as may be approved by the Board of Insurance Com-</u>
<u>missioners."</u>  (Emphasis ours).

The language of the emphasized part of the act just
quoted can lead to the one conclusion that the authority of
the Board of Insurance Commissioners thereunder is to approve
or disapprove that part of the contract which has been entered
into between the title insurance company and its representa-
tive for the division of the premiums.  The Board of Insurance
Commissioners has no authority to approve or disapprove the con-
tract of appointment by the title insurance company of the per-
son, firm or corporation owning or operating an abstract plant
as its representative.  Nor can it inquire as to the qualifica-
tions of such representative other than to satisfy itself that
such representative owns and operates an "abstract plant" as
above defined.

As to the other powers delegated to the Board of Insur-
ance Commissioners by virtue of the other sections of the act,
none of them specifically or by implication would authorize the
Board of Insurance Commissioners to exercise any supervision
over the acts and conducts of the representative of the title
insurance company other than to satisfy itself that the arrange-
ment for the division of premiums was being carried out in accord-
ance with the contractual agreement as  approved by it.

You are therefore advised that the authority of the
Board of Insurance Commissioners to either approve or revoke
any arrangement between the title insurance company and its
representative is as hereinbefore defined.

Yours very truly

ATTORNEY GENERAL OF TEXAS

CKR:ms:wc                     By s/C.K. Richards
                                 C.K. Richards
APPROVED AUG 21, 1946            Assistant
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman

This Opinion Considered And Approved In Limited Conference