## WILLIAM HARPER V. J. J. TERRELL, COMMISSIONER.

### No. 1185. Decided April 30, 1903.

1.—School Land—Classification—Sale—Rescission for Mistake—Land Commissioner.

When valuable timber land was classified as dry agricultural, and appraised and offered for sale by the State, in consequence, at a fourth of its value, a purchaser complying with the law, though he knew of the mistake and it should be held that the State could maintain suit to set the sale aside, could not be deprived of his rights by the action of the Commissioner in canceling the sale, and could compel reinstatement as a purchaser by mandamus. (Pp. 479-481.)

2.—Cancellation of Sales—State—Land Commissioner.

An individual may rescind or refuse to perform an executory contract made in mutual mistake; but the Commissioner of the General Land Office has no authority, except as conferred on him by the statutes, to act for the State in rescinding or canceling sales of land made by it. (Pp. 480, 481.)

Original application to the Supreme Court by Harper for writ of mandamus against Terrell as Commissioner of the General Land Office.

*D. W. Doom* and *D. H. Doom,* for petitioner.—The land in question having been duly classified as dry agrcultural land, valued at two dollars per acre, and placed upon the market at that price, and sold by the Commissioner of the General Land Office to plaintiff, he, having paid the purchase money required by law, became the owner of the tract of land, subject only to the performance on his part of the contract of purchase for the payment of the balance of the purchase money, principal and interest, as it accrues, and the Commissioner of the General Land Office had no authority, without the consent of plaintiff, to reclassify the land or to require a higher price to be paid by plaintiff for the land. Sayles' Stats., arts. 4218e, 4218f; Act of April 19, 1901, p. 292, sec. 1; Gracey v. Hendrix, 93 Texas, 26; Willoughby v. Townsend, 93 Texas, 80; Hazlewood v. Rogan, 95 Texas, 295.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant, for respondent. [No briefs were filed by them.]

WILLIAMS, ASSOCIATE JUSTICE.—Relator has applied to this court for a writ of mandamus to require respondent, the Commissioner of the General Land Office, to reinstate upon the record of his office a sale which had been awarded to relator of a tract of school land and afterwards canceled by respondent for the reason stated below.

The pleadings show this state of facts: The land was, in fact, covered with valuable pine timber and was worth $8 per acre, but in 1901 was classified as dry agricultural land and valued at $2 per acre. On the 26th day of April, 1902, relator made application to buy the land, as classified, complying in all respects with the law. The application was accepted by the Commissioner and the land was awarded to applicant May 1, 1902. The Commissioner, having thereafter learned of the mis-

take in the classification and appraisement, canceled the sale on the 1st day of August, 1902, basing his action on such mistake alone. Relator's home was on another tract adjoining that in controversy, and upon this fact it is charged that, when he bought, he must have known of the error in classification and that the Commissioner in selling was acting upon a mistake of fact. We shall assume for the purpose of decision that this is true.

The law in force when the classification and appraisement were made gave to the Commissioner full authority to classify all of the school lands as "agricultural, grazing or timbered lands," and declared that, when such classification had been made, the lands "shall be subject to sale." Laws 1897, p. 184, arts. 4218e, 4218f. The conditions precedent to the power to sell having been thus complied with, and the purchaser by his application having accepted the offer to sell thus held out by the statute through such action of the Commissioner, and having complied with the statutory requirements, there was a complete executory contract of sale. Jumbo Cattle Co. v. Bacon & Graves, 79 Texas, 12. It might be conceded that the State, as vendor, would still have the same right, in equity, that any other vendor would have under similar facts, to repudiate or set aside such a contract for fraud or mistake, and still it does not follow that the Commissioner had authority to cancel the contract and thus, by his own action, put an end to the right of the purchaser. The sale was not void. It was made in the exercise of a power clearly vested in the Commissioner and must stand until set aside by competent authority. An individual who had made such a contract might have the right, upon discovery of a fraud or mistake in its execution, to refuse to proceed further in carrying it out, and a court of equity might, upon a showing of such fraud or mistake as justified his refusal, decline to compel specific performance. But in order to say that the Commissioner of the General Land Office could, upon this idea, cancel the contract in question, it must be held that he is invested with the power to represent the vendor in such matters, and we do not find such a power among those conferred upon him by the statutes. He does represent and bind the State in making a sale in compliance with the law, but, when the sale has been made, his further duties are defined in the statute, and, stated in a general way, they are simply to see to the performance by the purchaser of the subsequent conditions of the sale, and to complete the title when such conditions have been performed. He is empowered to forfeit sales for nonperformance of such conditions, such as continued occupancy, payment of interest, and the like, but there is no trace of authority to determine and put an end to the rights of a purchaser upon such grounds as those existing here. The statute itself seems to contemplate occasion for action in behalf of the State other than that which the Commissioner may take. After authorizing the forfeiture of sales for nonpayment of interest, the statute (art. 4218l, Rev. Stats.), says: "Provided, further, that nothing in this article contained, shall be construed to inhibit the State from instituting

such legal proceedings as may be necessary to enforce such forfeiture or recover the full amount of the interest and such penalties as may be due the State at the time such forfeiture occurred, *or to protect any other right to such land,* which suits may be instituted by the Attorney-General or under his direction," etc.   The Commissioner is authorized to forfeit for the specified causes and the Attorney-General is authorized to cause suits to be brought "for the protection of any other right." The contract not being void, the purchaser is entitled to have the evidence which the statute prescribes of its existence and of his compliance with its terms preserved and kept up in the Land Office by the action of the Commissioner, until his rights under it have been terminated by the State.   The State or those who represent it in such matters may never see fit to set up the facts upon which the contract may be avoided, if they exist, and until this has been done the purchaser is entitled to have the proper action taken in the Land Office in order that he may continue his payments.   Hazlewood v. Rogan, 95 Texas, 295.   That the Commissioner is not, in all matters pertaining to these lands, the representative of the State is established by a number of decisions of this court. Savings Bank v. Dowlearn, 94 Texas, 388; Ketner v. Rogan, 95 Texas, 559; Walker v. Rogan, 93 Texas, 254.

We are not to be understood as deciding definitely that the facts stated show a right in the State to avoid the sale.   That question is left open. We merely hold that, if the existence of such right be assumed, it furnishes no answer to this application.

*Mandamus awarded.*