## J. O. Moore v. J. H. Price.

Decided May 8, 1907.

**Vendor and Purchaser—Abstract—Marketable Title—Insane Person—Waiver —Estoppel.**

By a written contract contemporaneous with a sale and conveyance of land the vendor agreed to furnish an abstract showing a good and marketable title, or, in default, to return the purchase money, in which event the vendee agreed to reconvey. In a suit to recover back the price for failure to furnish an abstract in compliance, held:

(1)   That vendor's undertaking was not met by an abstract showing same only by his ex parte affidavit of facts establishing his title by limitation.

(2)   Nor was he entitled to maintain the sale with proportional abatement of price on an abstract showing an outstanding title in a third party to an undivided one-sixteenth interest in the land.

(3)   The fact that the owner of an outstanding undivided interest was incurably insane and confined in the State Asylum, and the deed executed by those who would now inherit in case of her death, did not make the title good. There might be other heirs when her death should occur, or claims against her estate; and the existence of such claim in favor of the State for her care appeared probable.

(4)   The vendee had not waived his rights to rescission nor suffered estoppel by collecting rent accruing while he held title and credited by him on the purchase money sought to be recovered back, nor by offering the land for sale while he held it.

(5)   The contract with reference to the particular tract being a distinct one, the right to its enforcement was not affected by the fact that the conditional sale was a part of a larger transaction involving many other tracts of land.

Appeal from the District Court of Lampasas County. Tried below before Hon. John M. Furman.

*Works & McKee, J. D. Basham* and *R. M. Vaughn,* for appellant.— Other transactions between appellant and appellee could not be enquired into, the contract sued upon being an entire and complete instrument. Milliken v. Callahan County, 69 Texas, 206; Dolson v. DeGanahl, 70 Texas, 620; Faires v. Cockerell, 88 Texas, 428; Heffron v. Pollard, 73 Texas, 96.

In order for limitation to constitute "a good and marketable title" to the land involved in this suit, it must appear as a matter of law that appellee had such a title and such a title is not shown

where the state of the evidence is such as to make the question of title depend upon the facts to be determined by a jury, or the court sitting as a jury. Greer v. Stock Yards Co., 16 Texas Ct. Rep., 672.

Since an undivided interest was outstanding in Ann Price, and could not be conveyed by her to appellant, said abstract did not show a good and marketable title. Jones v. Philips, 59 Texas, 609; Hunt v. McReynolds, 20 Texas, 599; Vardeman v. Lawson, 17 Texas, 16; Hollifield v. Landrum, 71 S. W. Rep., 979; Warvelle on Vendors, sec. 46; Roberts & Corley v. McFadden, Weiss & Kyle, 74 S. W. Rep. 106.

By marketable title is meant one reasonably free from such doubts as would affect the market value of the estate, one which a prudent man with knowledge of all the facts and their legal bearings would be willing to accept. Mitchell v. Sheppard, 13 Texas, 484; Graham v. Stephen, 15 Texas, 97; Holman v. Criswell, 15 Texas, 395.

*W. B. Abney* and *Walter Acker,* for appellee.—The 52½ acres of land was a comparatively small part of the trade, or transaction, between plaintiff and defendant, and made contemporaneously with the instrument set out in plaintiff's petition. York v. Gregg, 9 Texas, 94; Hill v. Still, 19 Texas, 84; Kent's Com. star pages, 475-476.

No question could be raised on said abstract, except as to 30-32 acres of said land; and as to that, the title appears to be in Miss Ann Price, who is hopelessly insane, and has been in that unfortunate condition for many years, her mother, Sarah A. Price, and her brother, J. H. Price, and those from whom defendant holds by deed with full warranty of title, being her only heirs, who conveyed the land to plaintiff by deed with full covenant of warranty. Roberts v. McFaddin, 74 S. W. Rep., 109, and cases cited; Fant v. Wright, 61 S. W. Rep., 520; Hubert v. Grady, 59 Texas, 506; Hedderly v. Johnson, 18 Am. S. Rep., 521, 523; Barnard v. Brown, 67 Am. S. Rep., 433-435; Townsend v. Goodfellow, 12 Am. S. Rep., 739-740.

After plaintiff was in possession of all facts affecting the title to the land, he elected to ratify the contract by recording his deed, collecting rent on the land, and offering to sell it. Coddington v. Wells, 59 Texas, 49; Tom v. Wollhoefer, 61 Texas, 281; Phillips v. Herndon, 78 Texas, 384; Wells v. Houston, 23 Texas Civ. App., 645; Burson v. Blackley, 67 Texas, 11.

KEY, ASSOCIATE JUSTICE.—J. O. Moore brought this suit against J. H. Price for the recovery of $2,025 and 6 per cent. interest thereon from May 1, 1905. The suit was based upon the following contract in writing:

"The State of Texas,
    County of Hill.
    Know all men by these presents that we, J. O. Moore and J. H.

Price, have entered into the following agreement, to wit: J. H. Price has this day executed deed to J. O. Moore to 52½ acres of land in Bell County, Texas, for a better description of same reference is hereby made to said deed, which is executed by the said J. H. Price and wife Cordie J. Price, and his mother Sarah A. Price, for and in consideration of $2,100 cash in hand paid, the receipt of which is duly acknowledged and the said J. H. Price agrees to furnish the said J. O. Moore an abstract to said property, showing a good and marketable title to said land, but in the event he should fail or refuse to furnish said abstract showing a good and marketable title to said land by April 1, 1905, then the said J. H. Price agrees to pay the said J. O. Moore the sum of $2,100. The said J. O. Moore agrees that should the said Price be unable to furnish abstract showing good and marketable title, and thereby become liable on said bond for the sum of $2,100, that he, the said Moore, will re-deed said land to the said Price at the time said Price pays the said Moore said sum of $2,100.

"Given under our hand this 22d day of December, 1904.

J. H. Price,

J. O. Moore."

The plaintiff alleged in his petition that the defendant had failed to furnish an abstract showing a good and marketable title to the tract of land referred to in the contract, and on account of such failure was liable to him for $2,100, as specified in the contract, less $75 received by the plaintiff as rent for the land. It was also alleged and proved that before bringing the suit the plaintiff executed and tendered to the defendant a deed conveying the land back to him.

The defendant's answer embraced exceptions to the petition, a general denial, a plea of estoppel and waiver, and another plea to the effect that if the abstract furnished by the defendant did not show a good and marketable title to all the tract, that it did show such title to all except an undivided one-sixteenth; that the sale of the tract of land in question was part of a large transaction, involving the transfer of numerous tracts of land; that the plaintiff could be compensated for the defect in the title to the 52 acre tract by payment to him of the money value of the shortage, and that as this was only part of a transaction involving the exchange of several tracts of land, and the defendant can not be restored to his former status, the plaintiff should not recover in this suit.

There was no jury in the case and the trial court rendered judgment for the defendant, and the plaintiff has appealed. The trial court held (1) that no breach of the contract was shown because the abstract furnished by the defendant showed a good and marketable title; and (2) if such was not the case, inasmuch as the plaintiff, after receiving the abstract and being advised by his attorney as to the defects in the title, collected rent for the land and otherwise exercised acts of ownership over it, he was precluded from a recovery in this suit.

On both of these points we believe that the court below committed error. It is not claimed that the first abstract that was furnished

was in compliance with the contract, and it was not put in evidence. The second or supplemental abstract failed to show a complete recorded or written title, but was accompanied by an exparte affidavit of the defendant, detailing facts which, if true, showed title by limitation except as to an undivided one-sixteenth interest in the tract, which the abstract affidavit showed was owned by the defendant's sister, Miss Ann Price, who was insane and confined in the Lunatic Asylum at Terrell, Texas. The abstract showed warranty deeds executed by the mother and other relatives of Miss Ann Price who would be her heirs and inherit the property from her if she died while they were living. It was also shown by J. H. Price's affidavit that he had rendered services for Miss Ann Price of much greater value than her interest in the land, but any claim that he might have for such services was barred by limitation.

In our opinion the abstract did not show a good and marketable title for two reasons: (1) If it be conceded that such title could be shown by exparte proof of facts showing title by limitation, we are of the opinion that the plaintiff had the right to decline to accept an abstract containing no other proof upon that subject than such as was furnished by affidavit of the defendant. The latter was vitally interested in the matter, and we do not think the plaintiff was required to accept as absolutely true his sworn statements as to the facts relied on to show limitation. (2) The abstract showed an outstanding title to an undivided interest of one-sixteenth in Miss Ann Price, and the fact that she was hopelessly insane and confined in one of the State's insane asylums, and that her nearest relatives have executed warranty deeds, does not cure that defect. She is still alive, and the relatives referred to, who assume to be her heirs, may die before she does and other relatives may inherit her property. Furthermore, it was not shown that no debts existed against her estate for which her interest in the property would be liable. On the contrary, upon the facts shown, we think it may be assumed that the State is her creditor for maintenance and support in one of its asylums, and can have her part of the property referred to applied to the payment of its debt, as provided by articles 136 and 137 of the Revised Statutes.

As to the other point upon which the trial court rested its judgment, the facts are, in substance, as follows: Before the defendant sold the land to the plaintiff, J. A. Webb rented it from the defendant for the year 1905, and executed his note for $75 for the rent, payable in August, 1905, and the note was turned over to the plaintiff, Moore, and he collected it after it was due, and after his attorney had advised him of the defects in the abstract of title furnished by the defendant. Also in August, 1905, Webb attempted to rent the land from the plaintiff for another year, but the plaintiff declined to let him have it stating that he desired to sell it, and that the rent contract might interfere with the sale. The plaintiff, testifying as a witness, admitted that he collected the $75 note for the rent of the land, and credited it upon the $2,100 he was claiming under the contract sued on. He also admitted that he offered the land for sale, relying on the contract referred to, and stated that

if he had sold it he intended to assign the contract to the purchaser. In our opinion these facts failed to show either an estoppel or a waiver. Manifestly, they fall short of an estoppel, because it was not shown that on account of such facts the defendant was induced to do any act which he would not otherwise have done. Nor do such facts establish a waiver of the plaintiff's right to enforce the contract sued on. A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. (29 Am. & Eng. Ency. Law, 1091.)

As we construe the contract sued on it constitutes a conditional contract of sale, Moore being the optional vendor and Price the vendee. By its terms upon the happening of a certain event, viz.: the failure of Price to furnish an abstract showing a good and marketable title to the land which he had then conveyed to Moore, he agreed to purchase the land from Moore and pay him $2,100 therefor. Thereafter Moore was the owner of the land in the sense that he had such title as Price could convey to him. The note for the rent which was executed before Price sold the land to Moore, seems to have been delivered by the former to the latter, thereby authorizing Moore to collect the note; and the mere fact that Moore collected it after Price had failed to furnish the abstract required and had become bound to pay for the land, should not be held to establish an intention upon the part of Moore to release Price from his contract. He had a right to collect it without entertaining such intention, and therefore the fact that he did collect it does not establish the existence of such intention. Nor did the offer to sell the land establish an intention on Moore's part to relinquish his rights under the contract with Price. The most that can be said in that regard is that such offer indicated a conditional intention to release Price. In other words, if the plaintiff could have sold the land to some one else he would have released Price, and his offer to sell it does not prove anything more than an intention to release Price, *if he sold the land.* The offer to sell the land was not inconsistent with any right of Price's and its sale would have enured to his benefit, because it would have released him from his obligation to pay $2,100. Hence we hold that the defendant failed to establish his defense of waiver.

The fact that the sale of the 52½ acres of land from Price to Moore was part of a larger transaction, involving many other tracts of land, is not regarded by this court as of any importance in this case. Although part of a larger transaction, the instrument sued on is a separate, distinct and unambiguous contract, by which the defendant obligated himself to furnish the plaintiff an abstract showing a good and marketable title to the particular tract of land referred to in the contract; or, in the event of his failure to do so, pay the plaintiff $2,100 when the plaintiff redeeded him the land. By the express terms of the contract the promise to pay the $2,100 became absolute and binding upon the failure to furnish the abstract. The defendant had the power to so bind himself, and having done so by this instrument, the circumstances under which the contract was made are immaterial, as long as they do not show

duress, fraud or mistake, neither of which are relied on in this case.

The case seems to have been fully developed, there is no conflict in the testimony, and therefore the judgment will be reversed and judgment here rendered for the appellant against the appellee for $2,025, with 6 per cent interest from the first day of May, 1905.

*Reversed and rendered.*

Writ of error refused.