## WRIGHT v. BOTT.

(Court of Civil Appeals of Texas. Amarillo. Jan. 3, 1914. On Motion for Rehearing, Feb. 7, 1914.)

1. VENDOR AND PURCHASER (§ 44*)—ACTION BY PURCHASER—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for specific performance of defendant's contract to sell land or, upon refusal of that relief, for recovery of the part of the price paid, *held* not to show that defendant relied on any representations as to the contents of the contract of sale with reference to the time of performance, etc.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 69–76; Dec. Dig. § 44.*]

2. VENDOR AND PURCHASER (§ 44*) — PAROL EVIDENCE—VARYING CONTRACT.

If the vendor examined the contract of sale and did not rely on any representations of the purchaser as to its contents, the minds of the parties are presumed to have met in executing it, in absence of fraud, so that the vendor cannot claim that the contract signed was not the contract of the parties.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 69–76; Dec. Dig. § 44.*]

3. VENDOR AND PURCHASER (§ 44*)—ACTION—SUFFICIENCY OF EVIDENCE — FRAUD AND MISTAKE.

In an action by the purchaser of land under a contract to sell for specific performance or, if that is denied, for recovery of part of the price paid, evidence *held* not to show fraud or mutual mistake in the execution of the contract, resulting in the omission of a provision for forfeiture of the sum paid, upon failure to pay the balance within a certain time.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 69–76; Dec. Dig. § 44.*]

4. REFORMATION OF INSTRUMENTS (§ 43*) — CONTRACTS—PROOF OF CONTRACT.

In order to reform a contract, plaintiff must show the exact form to which the contract should be brought.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 154; Dec. Dig. § 43.*]

5. DAMAGES (§ 76*)—PENALTIES.

The courts are strongly inclined to treat agreements to pay a lump sum, in case of failure to perform a contract, as a penalty.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 154, 155; Dec. Dig. § 76.*]

---

**6. VENDOR AND PURCHASER (§ 78*)—CONTRACT —TIME AS ESSENCE—EVIDENCE.**

Unless it clearly appears that time was intended to be of the essence of a contract to convey,' the courts should not so construe the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121–125; Dec. Dig. § 78.*]

**7. VENDOR AND PURCHASER (§ 80*)—ACTIONS BY PURCHASER—SUFFICIENCY OF EVIDENCE.**

In an action by the purchaser to recover earnest money paid the vendor on the contract price on the vendor's refusal to perform evidence *held* to show that the contract of sale did not contemplate that the vendor should retain the amount paid as a forfeit, upon failure to pay the balance on a certain date.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 132–135; Dec. Dig. § 80.*]

**8. PUBLIC LANDS (§ 173*) — CERTIFICATE OF OCCUPANCY.**

The certificate of proof of occupancy cannot be gone back of to show collusion, nonsettlement, or lack of intention to settle.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**9. PUBLIC LANDS (§ 173*)—CERTIFICATE OF PROOF OF OCCUPANCY—EFFECT.**

A certificate of proof of occupancy of public school land does not establish a clear and perfect title which it is beyond the power of the state to cancel.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**10. VENDOR AND PURCHASER (§ 140*)—ABSTRACT OF TITLE.**

Under a contract for the sale of land occupied as public school land, where it required vendor to furnish an abstract showing clear and perfect title, the abstract should show the price for which the state sold the land, the amount originally paid thereon, that the principal due the state and annual interest have been paid, and that such sum was not greater than the amount the purchaser agreed to assume in the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. § 140.*]

**11. PUBLIC LANDS (§ 178*) — DISPOSAL OF SCHOOL LAND—SALE BY PURCHASER—PROOF OF OCCUPANCY—WHO MAY MAKE.**

That the purchaser of public school lands from the state conveyed the land before obtaining a certificate of occupancy would not affect the title of his grantee, or others holding under him, especially where the sale was not made till after the three years' occupancy required by law, as the statute permits proof of occupancy to be made by the grantee of the purchaser from the state or by the purchaser himself.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

**12. VENDOR AND PURCHASER (§ 133*)—TITLE CONVEYED.**

Where the right to complete the purchase of state school land stood on the books of the land office in the purchaser from the state, while the equitable right to the land was in fact in one claiming under him, the latter did not have a clear and perfect title to the property, so as to enable him to comply with an agreement in a contract of sale to furnish an abstract showing clear and perfect title in himself.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 234–237; Dec. Dig. § 133.*]

**13. VENDOR AND PURCHASER (§ 134*)—TITLE CONVEYED.**

Under a contract of sale requiring the vendor to furnish an abstract showing clear and perfect title, the purchaser had the right to have a lien for $8.88 taxes removed before paying the purchase money.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 238, 250–254, 258; Dec. Dig. § 134.*]

**14. VENDOR AND PURCHASER (§ 79*) — PERFORMANCE BY VENDOR.**

Where the vendor of land insists on construing the contract of sale strictly in favor of a forfeiture of the amount paid, upon failure to pay the remainder, the law will require strict performance on his part in furnishing an abstract of title showing clear and perfect title as agreed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 7, 8, 127–131; Dec. Dig. § 79.*]

**15. VENDOR AND PURCHASER (§ 140*) — ABSTRACT OF TITLE—"ABSTRACT."**

An "abstract" is a statement in substance of what appears in public records affecting the title of property agreed to be conveyed, and also a statement in substance of such facts as do not appear upon the public records which are necessary to perfect the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. § 140.*

For other definitions, see Words and Phrases, vol. 1, p. 46; vol. 8, p. 7560.]

**16. VENDOR AND PURCHASER (§ 341*)—ACTIONS BY PURCHASER—SUFFICIENCY OF EVIDENCE.**

In an action by the purchaser of land for specific performance or, in the alternative, to recover amount paid on the price, evidence *held* to show that it would be inequitable to permit the vendor to retain $500 paid to him on the contract of purchase.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1008–1017; Dec. Dig. § 341.*]

On Motion for Rehearing.

**17. APPEAL AND ERROR (§ 395*)—BOND—PARTIES APPEALING—FAILURE TO GIVE.**

Where the appellee did not perfect an appeal by executing an appeal bond as to certain defendants, appellee's cross-assignment attacking the judgment in favor of such defendants against him cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2058, 2064–2070, 2085, 2086, 3127; Dec. Dig. § 395.*]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Action by R. L. Bott against I. M. Wright and others. From a judgment for plaintiff against the defendant named, he appeals. Affirmed.

Crudgington & Works, of Amarillo, for appellant. Cooper, Merrill & Lumpkin, of Amarillo, and R. E. Taylor, of Henrietta, for appellee.

HUFF, C. J. The appellee, R. L. Bott, brought this suit originally in the district court of Wheeler county, the venue of which was afterwards changed to Potter county by agreement, against Ida Wright and I. M. Wright, husband and wife, and W. A. Laybourne for specific performance of a certain

contract for the sale of section 4, block L, 1/28, J. Pouintervant survey in Wheeler county. Laybourne, it is alleged, purchased from Wright and wife the section of land, after the above contract was entered into, with full notice. The appellee asked, in case of failure to get specific performance, for judgment against appellant, I. M. Wright, for the sum of $500, and interest thereon, the amount paid as part of the purchase money for the section. The appellant, Wright, joined by his wife, Ida Wright, alleged in reply thereto that the land contracted to be sold was the separate property of his wife, Ida Wright, and that he (I. M. Wright) alone signed the same as her agent, and the contract was not binding upon her, and therefore could not be enforced against her. They further allege that the contract made between appellee and appellant was, in part, that time was the essence of the contract, and that, if the balance due on the contract price was not paid within 30 days, the $500 paid should be forfeited to Ida Wright, and that the appellee drew up the contract and "handed it to I. M. Wright to sign, telling him that it embodied all the terms of said verbal contract; that said defendant, I. M. Wright, is and was an illiterate man, without education, ignorant of the details of such transactions, and having confidence in his fellow man, and at that time reposed perfect confidence in plaintiff, and, by reason of the said representations of the plaintiff and relying on the truth thereof, signed said instrument under the confident belief that it contained all the terms, conditions, and provisions of said verbal contract theretofore made and entered into. Defendants say that plaintiff is and was at that time an educated business man, experienced in drafting of such contracts, and defendants say that the said omissions in said instrument were due to either the mutual mistake of plaintiff and said I. M. Wright, or the fraud of plaintiff in intentionally omitting some portion of said contract." They further allege that he promised the abstract agreed upon, showing a good merchantable title in Ida Wright, and that appellee exercised no diligence, but negligently allowed said limit to pass, while pretending to have the title examined by a Kansas lawyer, and that finally on December 7, 1907, appellant declared the trade off, took down the deed and abstract, and kept the $500, and sold to his codefendant, W. A. Laybourne.

W. A. Laybourne answered, setting up the invalidity of the contract on the grounds pleaded by Wright and wife, and that the deed signed by Wright and wife to appellee, Botts, was in fact not delivered in escrow and never passed from the control of Mrs. Wright. He also alleges negligence and delay on the part of appellee in asserting the invalidity of the title to the land, as shown by the abstract and other matters not necessary to set out.

Judgment was rendered in favor of W. A. Laybourne for the land against appellee on his plea for specific performance, but in his (appellee's) favor against I. M. Wright for the sum of $500 and interest, amounting to the total sum of $664, from which judgment appellant brings this appeal.

The appellant presents his first assignment of error on the ground that the trial court instructed the jury to find a verdict for appellee against appellant for the sum of $500 and interest, the amount paid on the contract or in case they should find against appellee on specific performance, because it is asserted that time was the essence of the contract, and that that sum should be forfeited in case the balance of the purchase money was not paid within the time limit, and because the pleadings and evidence raise the issue that the terms agreed upon were omitted by mutual mistake of the parties to the contract or by the fraud of the appellee.

The contract as written is as follows:

"Contract made and entered into this the 17th day of October, 1907, by and between I. M. Wright of Kent, Texas, and R. L. Bott of Hummeston, Ia., witnesseth: That the said I. M. Wright has this day sold to R. L. Bott the following land, legal numbers as follows: Section four (4) block L, land lying just west of Clay section, for the sum of five thousand dollars ($5,000.00) on the following terms: $500.00 cash paid in hand, which is hereby receipted for and $4,500.00 on or before thirty days from this date. I. M. Wright is to deed by warranty deed and furnish abstract showing clear and perfect title and to send deed and abstract to the Hummeston State Bank, Hummeston, Ia., and the warnt. deed is to be free and clear of all incumbrances, except $624.00 back to the state.

"[Signed]                    Ida Wright,
          "By I. M. Wright, Agent,
                    "And R. L. Bott."

I. M. Wright testified with reference to the execution of the contract: "I do not remember having any conversation with him (Bott) prior to the time he and I began negotiating with reference to this land. I met him on the street in Shamrock on the 17th of October, 1907. I was introduced to him by Ulm, as I remember. We talked some on the street. We went then to his office. At first I don't know whether there was but two of us there in the office. Bott and myself walked in first, and Ulm finally came in, and Walter Williams was in there a part of the time. I made a contract with him there with reference to the sale of this section of land in question. I have seen the copy of the contract read in evidence here a while ago. It is the one we made. He read it over to me at the time. Don't think I read it myself. I thought I understood it. I under-

stood that I was to give him a perfect title to the land. I did not expect him to pay me $4,500 until I did that. I had the abstract and deed sent to the bank at Hummeston, Iowa. Mr. Nicholson of the Shamrock Bank sent it for me." Again he testified: "Plaintiff was to put up $500 for a forfeit and pay the balance in 30 days or sooner, if he could have the papers examined sooner. That was the deal. I suggested the time limit of 30 days." Again he says: "We had agreed upon the $5,000 as the price while we were yet on the street. Bott went into the office and drew the contract. I don't think I read it. He read it to me. I am not accustomed to making deals of that kind. I have had very little business of that sort to do. I don't remember fixing up a contract on land before. I may have done so. I don't remember whether the $500 was mentioned while either Ulm or Williams was in the office. I don't remember whether the $500 was called a forfeit or not. I would not say about that positively. I don't know whether the contract was understood by me as embodying the terms of our conversation or not. It called for the $5,000, of course, the $500, and then the $4,500. He wrote it out and read it to me and I signed it that way."

Walter Williams testified that he heard the trade talked over two or three times, and heard it mentioned then that there was $500 up as a forfeit, and the $4,500 was to be paid within 30 days.

The record in this case discloses the fact that appellant dealt considerably in land, and had done so before entering into the contract in question. We find no evidence that he was an ignorant man, but, on the contrary, we think the record discloses him as rather well informed as to his own rights.

It will be noted that appellant does not allege that the contract was misread to him by appellee. He testified the contract was read to him. He did not recollect that the $500 was mentioned as a forfeit in the conversation before signing the contract, and did not know whether he understood the contract or not. The evidence nowhere indicates that the appellee made false representation as to the contents of the instrument. On the other hand, it clearly indicates it was read to appellant as drawn. The terms of the contract were not concealed from appellant, but read to him. He took the instrument and signed it at the time. There is no allegation or proof that the appellant, through an infirmity on his part of any kind, was unable to read the contract.

[1] The evidence does not show that he relied upon representations as to its contents, but for himself he had the instrument read. He did not accept the statement of appellee as to its legal effect, but judged for himself after hearing it read.

[2] The appellant having undertaken for himself to examine the contract for himself, and with equal opportunity for so examining it, and without relying on the statement of appellee, acted for himself, and should not now be heard to say the contract which he then signed was not his contract. Hawkins v. Wells, 43 S. W. 816. The presumption that the minds of the parties met in the contract signed by them can only be rebutted by proof of fraud, which in this case is wholly lacking. The whole transaction, in so far as appellee was concerned, was open and fair. The instrument was drawn when both were present and read and signed at one sitting. The trade was made, agreements reached, and contracts executed at the same time without a separation, and while everything was then fresh in the minds of the parties.

[3] We do not see the slightest evidence of fraud. We think it equally clear there was no mutual mistake shown. It is urged that appellant was an uninformed man and unacquainted with contracts of this kind, and that appellee was a shrewd business man. "Courts cannot measure the relative intelligence and business qualifications of parties to a transaction, unless it reaches the point where it appears that one overreached the other by reason of his incapacity." Moore v. Cross, 87 Tex. 557, 29 S. W. 1051. If we were to pass on the capacity of the two men from this record, we would say that appellee had no advantage over appellant in that respect.

The appellant in this case seeks to rectify the contract so that it will read that, in case appellee failed to pay $4,500 within 30 days, the $500 should be forfeited to appellant as liquidated damages as a compensation to him for the damages sustained by him by reason of the breach.

[4] In order to rectify a contract, the party seeking to do so must be able to show exactly the form to which the contract should be brought. Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290; Ry. Co. v. Shirley, 45 Tex. 355. This the evidence in this case leaves much in doubt. It would be hard, under appellant's contention, to tell the form which the contract should take in order to give him the right to retain the $500 as a forfeit to him in compensation for the damages occasioned by the breach.

[5] Courts are strongly inclined to treat all agreements to pay a lump sum in case of failure to perform the terms of a contract as a mere penalty. Farrar v. Beeman, 63 Tex. 175; Eakin v. Scott, 70 Tex. 442, 7 S. W. 777.

[6] Time does not appear to have been the essence of this contract, either in the written instrument or by appellant's testimony, and, unless it is clearly so, the courts should not declare it to be. We are not inclined to hold that the evidence of appellant, even if allowed to change the form of the contract, authorized him to retain the $500, but by the evidence he should be held to prove his damages. This he has not done. There is no

claim that the appellee was not entitled to the purchase money paid on the contract, but the only question urged is that the court should have left it to the jury whether the testimony as to the actual agreement made did not authorize the jury to find the contract as contended for by appellant.

[7] We think in this case the court properly held under the contract appellant was not entitled to hold the money, and, as there was no other damages proven, the appellee should have recovered that sum with interest. The facts do not show fraud on appellee's part in making the contract, and do not show a mutual mistake. The abstract called for in the contract was to show "a clear and perfect title," and the "warranty deed is to be free and clear of all incumbrances." The evidence in this case as to the abstract shows the land to have been public free school land. The abstract in the record shows a certificate by the Land Commissioner dated September 27, 1905, reciting that W. C. Wright on December 20, 1912 (this is evidently an'error in the record) filed proof of three years' occupancy of section 32, block A–8, grantee H. & G. N. Ry. Co. Said land having been sold to W. C. Wright November 15, 1899; the certificate showing additional lands, one section of which is section 4, certificate 1/28, grantee J. Pouintervant, which certificate was recorded in the Deed Records of Wheeler county October 12, 1905. The abstract further shows that W. C. Wright and wife, Bernice Wright, conveyed to I. M. Wright May 25, 1903, which was recorded in the 'Deed Records of Wheeler county, date not given, and deed from I. M. Wright to Ida Wright August 22, 1903, for a recited consideration of $3,000. A deed of trust to secure two notes, one for $1,754.50 and one for $1,259.50, both dated November 28, 1905, due in one and two years, payable to R. N. Sewell. The deed of trust is to L. R. Clay, trustee, by I. M. Wright, for the benefit of R. N. Sewell, and is dated November 28, 1905. A release of the above deed of trust, executed by R. L. Clay, trustee, properly acknowledged as to Clay, trustee, and also signed by R. M. Sewell, whose acknowledgment was taken before a justice of the peace in Oklahoma. The date of the release is October 14, 1907, but the record does not show when recorded. The abstract also shows taxes due on the land for the amount of $8.88. This appears to have been the abstract as presented to the appellee by appellant. Afterwards, and after a contract with Laybourne, a supplement was added, showing the land was in the name of W. C. Wright in the Land Office, and a new release of the above deed of trust was obtained, properly acknowledged and recorded, and that the taxes mentioned in the original abstract had been paid. Now, did this abstract, as presented to appellee, show a "clear and perfect title"? The abstract of title does not show an application to purchase the home section No. 32, its classifica-

tion, or the price of the land; nor the application to purchase section No. 4 as an additional section, or its price, or when it was placed on the market. There is no award shown to either the home or additional section. The price for which the land was sold to W. C. Wright by the state, its classification and appraisement is not shown. There is nothing in the abstract showing the payment of 1/40 of the purchase money, or that the amount of interest due on the purchase had been regularly paid; or in other words, the abstract does not show the standing of the land in the Land Office at the date of the contract. In the first place, there is no award shown to W. C. Wright. In the case of Corrigan v. Fitzsimmons, 97 Tex. 595, 80 S. W. 989, and Smyth v. Saigling, 110 S. W. 550, it is held that upon the proof of award it will be presumed that the land was properly classified and appraised. It will be found, upon examination of those cases, that the application and the obligation to purchase the land, which were made and accepted by the Land Commissioner, were introduced in evidence. It is a well-known fact that the application gives the classification and valuation of the land when filed in the Land Office by the proposed purchaser. Just how far the certificate of the proof of occupancy and its recordation should be held to cure the defects, we are not prepared at this time to say.

[8] The case of Logan v. Curry, 95 Tex. 664, 69 S. W. 129, has settled that the certificate cannot be gone back of in order to show collusion, nonsettlement, or lack of faith or intention. Salgado v. Baldwin, 105 Tex. 508, 152 S. W. 165. The power of the Commissioner is derived from the statute giving it, and will not be extended beyond it. It has been held that the sale of school land at less than its appraised value is invalid, and, while the purchaser may maintain a suit of trespass to try title on the award to him, yet the state is not precluded from setting it aside. Erp v. Robison (Sup.) 157 S. W. 1160; Id. (Sup.) 155 S. W. 180; Erp v. Tillman, 103 Tex. 574, 131 S. W. 1057. It is also held that, if the land is sold for less than its value by mistake, the Commissioner of the Land Office has no power to cancel the sale, even if the state had the right to avoid the sale. Harper v. Terrell, 96 Tex. 479, 73 S. W. 949. The fact that the certificate of the Commissioner may now by law be recorded as a muniment of title, it occurs to us, does not necessarily dispense with proof of the award. The proof of occupancy does not prove a sale, but establishes that the party to whom it is issued has resided upon the land the required time, and precludes any question on that ground. We are inclined to think the statute limits its effect to that point. However, we are not undertaking to say just how far it should go or just what its effect should be in establishing the title in the purchaser from the state.

[9] Under the law and decisions as we read them, such certificate does not make the title "clear and perfect," passing it out of the power of the state to cancel.

[10] At least a prospective purchaser would have the right to have the abstract show the price which the state sold the land for and the amount originally paid thereon. The abstract, we think, should also show that the land is in good standing in the Land Office with reference to the payments of the principal due the state and the annual interest required to be paid by law in order to show a "clear and perfect title." The appellee had the right, as we think, to have an abstract showing that there was no greater sum due the state than the amount which he had agreed to assume in his contract.

[11] Again, this land, as shown by the abstract, stood in the Land Office in the name of W. C. Wright. He conveyed this land before he obtained a certificate of occupancy. The statute authorized the vendee therein to make the required proof of occupancy, and, if he refused, the vendor could do so. This fact did not affect the title of Ida Wright, especially if the same was not conveyed out of W. C. Wright until after the three years' occupancy.

[12] However, as the title or right to complete the purchase stood in the Land Office, it was in W. C. Wright; and to that extent the legal right was in him, and the equitable right in Ida Wright. If the patent should issue with the record in the Land Office as it was when the abstract was delivered to appellee, it, as we understand, would be issued to W. C. Wright, clearly placing the legal title in him. With the legal title in one person, and the equitable in another, we do not think it appears to be a "clear and perfect title." It therefore became an important question to appellee to know who paid the purchase money, and who was paying interest installments. If W. C. Wright had decided to pay the balance of the purchase money and did so, receiving the patent to the land in his own name, serious complications may have arisen. It appears to be conceded that the release of the deed of trust was not, as to Sewell, properly authenticated for record. Under the facts of this case, it may have been sufficient and yet not clear and perfect.

[13] The taxes due for $8.88 was an incumbrance, though small, it was still a lien which appellee had the right to have removed before he paid his money.

[14] Appellant in this cause insists on construing the contract strictly in favor of a forfeiture as he claims it. The law will therefore require of him a strict performance on his part of the agreement before he can recover it. This we do not think he has done.

[15] This court, through Mr. Justice Hendricks, in the case of Sparkman v. Davenport, 160 S. W. 411, defined an abstract in the following language: "By an 'abstract' is meant a statement in substance of what appears in the public records affecting the title, and also a statement in substance of such facts as do not appear upon the public records, which are necessary to perfect the title." We believe this to be a correct definition, and the authorities collated and cited in that case support it. In the case of Moore v. Price, 46 Tex. Civ. App. 304, 103 S. W. 234, Mr. Justice Key held substantially that a purchaser contracting for an abstract showing a merchantable title is entitled to an abstract showing a good title, and, upon the failure of the vendor to furnish such abstract, the vendee was entitled to recover the purchase money paid on the land. A writ of error was denied in that case. To the same effect is the case of Foster v. Eoff, 19 Tex. Civ. App. 405, 47 S. W. 399. "Tested by this construction, we feel constrained to hold that appellee failed to show a compliance on his part with the condition upon which the notes were executed and delivered, and hence that the failure of consideration pleaded must be sustained." Loring v. Oxford, 18 Tex. Civ. App. 415, 45 S. W. 395. The above case was one in which the vendor had not furnished an abstract showing a good title as he agreed to do.

The contract in this case evidences that appellee was to pay $4,500, but, before he paid the sum, I. M. Wright promised to furnish the abstract and a warranty deed. He testified: "I was to give him a perfect title to the land. I did not expect him to pay $4,500 until I did that." The abstract above set out was all he ever furnished. The appellee had delivered the abstract to a lawyer in Topeka, Kan., who was not satisfied with the title shown thereby, and advised appellee to get a Texas lawyer to pass on the title. When the appellant demanded a return of the deed and abstract, the appellee wrote to the party into whose hands appellant had placed the deed and abstract, and requested that, on account of the defects pointed out, he be permitted time in which to have it examined by a Texas lawyer. Appellant testified he never heard of the request. It is shown, however, that some few days before he wired for the abstract he and Laybourne were negotiating for a sale of the land, if they had not then reached an agreement. Appellant and his wife alleged that I. M. Wright had no authority to bind the wife in the contract for the sale of the land, and sought to defeat a specific performance on that ground. Laybourne relies on the same facts to defeat recovery. It is also shown by the record that it took about 90 days after the Wrights had entered into a contract with Laybourne to get the abstract and title in such condition that would enable Laybourne to take it. The facts further show that the Wrights lost nothing in the trade. They got the same price for the land from

Laybourne that appellee had agreed to pay for it. The appellee was never in possession of the land, and did not derive any benefit therefrom in so far as the record discloses.

[16] We think it will be inequitable for I. M. Wright to retain the $500 paid him on the contract, and we believe that justice will be done, at least in part, in requiring him to return this sum of money with interest. The appellee offered to take the land, and tendered the contract price to appellant or to Laybourne, and also kept up the tender in court; but appellant peremptorily refused to complete the trade in order that he might sell to Laybourne. In our judgment, the court properly instructed the jury to find for appellee the $500, with 6 per cent. interest from the date it was turned over to him.

The cross-assignments will not be considered. As we understand appellee, we are not requested to consider them in the event we affirm the case. In discussing the abstract, we have in a way considered appellee's assignments as to the charge of the court in that particular, and, as seen, we do not agree with the trial court as to his construction of the abstract and the contract under which it was made. The case is therefore affirmed.

HENDRICKS, J., not sitting.

### On Motion for Rehearing.

HUFF, C. J. In the original opinion we stated that appellee desired us to consider his cross-assignments only in the event of reversal. Upon reading the brief of appellee, we find this to be incorrect. Appellee requested a reversal upon his cross-assignments.

The suit was brought against Ida Wright, I. M. Wright, and W. A. Laybourne for the specific performance of a contract made by I. M. Wright, and also, in the alternative, to recover $500, with interest, paid Wright as part of the purchase money for the land on the contract. The land was the separate property of Mrs. Wright, and she and her husband sold the land to W. A. Laybourne after the contract sued on was executed. A verdict and judgment was had and rendered on appellee's suit for the specific performance in favor of Ida Wright and W. A. Laybourne thereon and against appellee. A personal judgment was rendered against I. M. Wright in favor of appellee for the sum of $664; from this judgment, I. M. Wright alone appeals, and asks for a reversal of that judgment against himself. Ida Wright and W. A. Laybourne, in whose favor judgment against appellee on a suit for specific performance was rendered, are not before this court by appeal or otherwise. The appellee made a motion for new trial, and gave notice of appeal, but did not perfect his appeal by executing an appeal bond. The cross-assignment urged by appellee in this court attacked the judgment against him in favor of Ida Wright and W. A. Laybourne on his suit for specific performance, because it is asserted therein that the uncontroverted evidence showed that he was entitled to specific performance as against Ida Wright and W. A. Laybourne. The appeal, as presented by I. M. Wright, in no way affects the judgment obtained by Ida Wright and W. A. Laybourne against appellee's cause of action.

[17] These parties not being before the court, a reversal of the judgment against I. M. Wright would not affect the judgment on specific performance in favor of Mrs. Wright and Laybourne. Ry. Co. v. Welch, 100 Tex. 118–122, 94 S. W. 333; Lauchheimer v. Coop, 99 Tex. 386, 89 S. W. 1061, 90 S. W. 1098. The appellee having failed to perfect his appeal by executing an appeal bond as to Ida Wright and W. A. Laybourne, we are without jurisdiction to consider appellee's cross-assignment assailing the judgment in their favor against him. Hoover v. Kearbey, 25 Tex. Civ. App. 71, 60 S. W. 782; Munoz v. Brassel, 108 S. W. 417; Ry. Co. v. Cheek, 159 S. W. 427. The appellee's cross-assignments of error are therefore overruled. We also overrule appellee's motion for rehearing.

We find nothing in the motion of appellant for rehearing which induces us to change our views as expressed in the original opinion; his motion for rehearing is also overruled.

HENDRICKS, J., not sitting.