SLAUGHTER v. MORTON et al. (No. 1145.)

(Court of Civil Appeals of Texas, Amarillo. April 4, 1917. On Motion for Rehearing, May 16, 1917.)

1. APPEAL AND ERROR ⬤⟹722(1) — ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error covering 11 pages of the brief, consisting of arguments, statements of fact, reproduction in question and answer form of much of the testimony, does not merit consideration under a strict construction of the rules.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2990, 2994–2996.]

2. EVIDENCE ⬤⟹183(14) — SECONDARY EVIDENCE—PROOF OF LOSS OF ORIGINAL.

Where several witnesses showed that they had made search in places where a letter would probably be found, and had failed to find it, and no notice to produce it was given until the time of the trial, the evidence was sufficient to establish its loss and make secondary evidence of its contents admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 615, 634.]

3. APPEAL AND ERROR ⬤⟹742(4) — ASSIGNMENT OF ERROR—PROPOSITIONS—RELEVANCY.

Under an assignment of error asserting that a question to and answer of a witness were too general, vague, and indefinite to prove agency, propositions that the person dealing with an assumed agent, whether general or special, is

bound· to· ascertaih,˙not orily the fact of agency, but the extent of his authority, and that in case either is controverted the 'burden of proof is on the party asserting agency, that authority delegated to a person to write˙and forward notices as to interest due on notes, and ˙to collect such notes and interest, does not confer the power to sell or transfer the notes, and that evidence of agency, which does not show the slightest delegation 'of right and power to an alleged principal to perform the very act for which the principal is sought to be held, presents a question of law for the court, were irrelevant.

**4. PRINCIPAL AND AGENT ⬸170(2)—RATIFICATION—EVIDENCE.**

A father's letter to his attorney showing his knowledge of his son's transfer of a note, and his direction to the attorney to procure additional security for the note for the benefit of another, sufficiently showed his ratification of his son's sale of the note.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 639, 640.]

### On Motion for Rehearing.

**5. APPEAL AND ERROR ⬸878(7) — ASSIGNMENT OF ERROR—CROSS-ASSIGNMENTS—CONSIDERATION—PARTIES.**

Where a defendant and cross-complainant sought judgment for attorney's fees on a note against both the plaintiff and a defendant indorser only secondarily liable, his cross-assignment as to such defendant could not be considered or judgment rendered against him without rendering judgment against the plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3580.]

**6. APPEAL AND ERROR ⬸792 — DEFECTIVE BOND—DISMISSAL OF APPEAL.**

Where no motion was made by a party to dismiss an appeal because of the defective bond, it is too late for the court, after it has rendered judgment, to dismiss it upon its own motion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3137–3141.]

**7. APPEAL AND ERROR ⬸376 — DEFECTIVE BOND—APPELLATE JURISDICTION.**

Where an appeal was taken by one secondarily liable on a note, and a defendant and cross-complainant was made the sole obligee of the bond, and the party primarily liable was no party to the appeal, the bond was sufficient to give the court jurisdcition of the appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2011–2016.]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Suit by C. E. Williams against J. G. Morton, R. E. Stalcup, Frank B. Farwell, and C. C. Slaughter Company, with answer and cross-action by defendant Morton against G. G. Wright, W. B. Slaughter, and C. C. Slaughter Company. Judgment for plaintiff and for defendant Morton and against defendant W. B. Slaughter, and the latter appeals. Judgment in favor of defendant Morton set aside, and judgment otherwise affirmed.

John W. Pope, 'of˙Dallas, for appellant. Tatum & Tatum and R. E. Stalcup, all of Dalhart, J. Y. Powell, of Houston, and Hartman & Ballreich, of Pueblo, Colo., for appellees.

⠄ HALL, J. Appellee Williams instituted this·suit to·enjoin the collection of a certain note in the sum of $5,424, and the foreclosure of a deed of trust by means of a trustee's sale, for the purpose of satisfying·the note. It is alleged, in substance, that on or about the 6th day of July, 1912, C. E. Williams and wife executed their certain promissory note in the sum of $5,424, due six months after date, payable to the order of the First National Bank of Dalhart, Tex., and bearing interest at the rate of 10 per cent. per annum˙ from maturity; that appellee Morton became the owner and possessor of said note during the month of November, A. D. 1912, and that he held a certain deed of trust conveying certain real estate in the town of Dalhart, executed by Williams, to secure the payment 'of the said note; that on the 30th day of June, 1916, and on the 7th, 14th, and 21st days of July, A. D. 1916, by and through one Frank B. Farwell (alleging the said Farwell to be a substitute trustee), by virtue of said deed of trust, was undertaking to sell said real estate and apply the proceeds thereof to the payment of the note in controversy. J. G. Morton, R. E. Stalcup, Frank B. Farwell, and the C. C. Slaughter Company were made defendants.

Appellee Morton, on the, 17th day of August, 1916, filed in the district court 'of Dallam county his answer and cross-action, and obtained a mandatory writ of injunction, compelling the appellees G. G. Wright, W. B. Slaughter, and C. C. Slaughter Company, a corporation, to produce in open court the Belle Green Ritchey notes, and restraining them, and each of them, from selling or otherwise disposing of three certain vendor's lien notes for the principal sum 'of $2,170.50, each, and known as the Belle Green Ritchey notes; that said notes constituted collateral security to the payment of the said note in controversy. In his answer and cross-action Morton prayed for judgment for the title to the said Williams note, and for the foreclosure of the deed of trust lien, as· alleged, and for the foreclosure of his pledgee's lien upon the Belle Green Ritchey notes. October 4, 1916, appellees G. G. Wright, W. B. Slaughter, and C. C. Slaughter Company answered. Appellee Slaughter alleged the facts to· be that he was and is the legal owner of the Williams note for the principal sum of $5,424, dated July 6, 1916, and that the appellee J. G. Morton did not acquire said note for a valuable consideration from him nor from any one else authorized to sell or transfer the said note, and that the said Morton was holding the possession of same wrongfully and illegally; that he acquired such possession through illegal means, and without knowledge or consent of said Slaughter, and that the three Belle Green Ritchey notes were never at any time pledged by the said Williams and wife· to secure payment of the said $5,424 note. Appellee Morton alleged in his original an-

swer and cross-action that he acquired the note in controversy from W. B. Slaughter and Coney Slaughter; and on October 11, 1916, filed a trial amendment alleging that he obtained the note in controversy from C. C. Slaughter as agent of the appellant, W. B. Slaughter. These facts were denied by appellant. A trial before a jury resulted in a verdict awarding the note in controversy to appellee J. G. Morton, foreclosing the deed of trust lien on the real estate described therein, and decreeing that the three Belle Green Ritchey notes were not pledged by Williams and wife as collateral to secure payment of the note in controversy. It was further adjudged that Slaughter recover nothing, and that Williams recover the Belle Green Ritchey notes.

[1, 2] The first assignment of error covers 11 pages of appellant's brief. It consists of arguments, statements of fact, reproduction in question and answer form of a great deal of the testimony, and, under a strict construction of the rules, does not merit consideration. We have decided, however, to consider it, since it presents simply a question of the admissibility of secondary evidence of the contents of a letter written by W. B. Slaughter to C. E. Williams. Several witnesses were introduced to prove that they had made search in places where said letter would probably be found and had failed to find it. No notice to produce it was given until at the time of the trial, and over numerous objections the witness Morton was permitted to state its contents. We think the evidence is sufficient to establish its loss, and secondary evidence was admissible.

[3, 4] The second assignment of error is based upon the court's action in permitting the following question and answer:

"Q. Just tell the jury and the court what Coney C. Slaughter would do with reference to these matters that you have spoken about, Miss Atkinson. A. Well, sometimes he would refer them to his father and sometimes he would write about them himself."

The objection urged is that the question and answer were too general, and so vague and indefinite that they did not tend to prove the agency of Coney Slaughter in transferring the note to Morton. Three propositions are urged under this assignment which, in our opinion, are not germane. The essence of the first proposition is that persons dealing with an assumed agent, whether general or special, are bound to ascertain, not only the fact of agency, but the extent of his authority, and, in case either is controverted, the burden of proof is upon the party asserting agency. The second proposition is that authority delegated to a person to write and forward notices as to interest, due on notes, and to collect such interest and to collect such notes, does not confer the power to sell or transfer the notes themselves. The third proposition is that evidence of agency which does not show the slightest delegation of right and power to an alleged agent to perform the very act for which the principal is sought to be held presents a question of law for the court. These propositions have no relevancy whatever to an assignment asserting that the above-quoted question and answer are too general, vague, and indefinite. Reference to the evidence of Miss Atkinson, as it appears in the record, shows that, when taken as a whole, the question and answer were not too general and vague. She had been testifying with reference to the authority and control of Coney C. Slaughter over the private papers and securities of his father, W. B. Slaughter. She had testified that she was connected with the bank of which W. B. Slaughter was president and Coney C. Slaughter was cashier, as stenographer and draft clerk. She stated, however, that some of her work was in connection with the private business of Coney C. Slaughter and his father, W. B. Slaughter, relating to matters outside of the bank; that she wrote letters for them in connection with such matters, and that, during the absence of W. B. Slaughter, Coney C. Slaughter attended to the private matters of his father; that Coney C. Slaughter had access to the papers and notes of his father, and would write letters concerning them; that he went through them at will, and carried them from Dalhart to Pueblo, in a trunk. In our opinion, the testimony of this witness, when taken in connection with other evidence bearing upon the issue, is sufficient to show that Coney C. Slaughter acted as the agent of his father in the sale of the note in question to Morton. Be this as it may, the evidence of the ratification of such acts by W. B. Slaughter is clear. His letter to Reese Tatum, dated March 17, 1915, is alone sufficient to show that he had knowledge of the transfer of the Williams note to Morton; and his directions to Tatum, as an attorney, to procure additional security for the note for the benefit of Morton, leave no room for dispute.

The fourth and fifth assignments of error are simply a repetition of the matters heretofore considered, and are also overruled.

Appellee Morton urges a cross-assignment of error based upon the action of the court in refusing to enter judgment in his favor for the amount of the attorney's fees. The stipulation for attorney's fees in the note is set out in the pleading, but it is not alleged that the note was placed in the hands of attorneys for suit, that suit has been filed to enforce collection, or that Morton had agreed to pay attorneys the fees provided for in the note for their services. The prayer is for judgment for the amount of the note, principal, interest, and attorney's fees. It has been frequently held in this state that the fact that a suit has been filed is a matter upon which the court may base a judgment for the attorney's fees. The court takes judicial

notice of the record in the case, and from the filing of a petition, signed by attorneys, the court knows judicially that the note has been placed in the hands of such attorneys for collection, and that suit has been filed, and, while there has been considerable conflict in the authorities, the rule is not established that it is neither necessary to allege nor prove these facts, or that the holder of the note has contracted to pay his attorneys the amount of such fees. First National Bank v. Robinson, 104 Tex. 166, 135 S. W. 372; Beckham et al. v. Scott, 142 S. W. 80; Brannin v. Richardson (Sup.) 185 S. W. 562; Raike v. Clayton, 175 S. W. 498; Smith v. Norton, 133 S. W. 733, and the authorities therein cited.

We overrule the appellant's assignments, and sustain the cross-action of appellee Morton, and the judgment as rendered by the trial court is affirmed, except as to that portion which denies the recovery of the attorney's fees; in that particular the judgment is reversed and rendered that Morton recover the attorney's fees stipulated in the note. Affirmed in part, and reversed and rendered in part.

## On Motion For Rehearing.

Appellant, Slaughter, moves the court to set aside that part of our decision granting the cross-assignment of J. G. Morton, and rendering judgment against movant for 10 per cent. attorney's fees. The ground of the motion is that Morton did not file a motion for new trial, did not appeal from the judgment, and Williams did not move for a new trial nor join in the appeal; that Morton in no manner called the attention of the trial court to the alleged error. As shown in the original opinion, Williams filed this suit, complaining of Morton, his attorney Stalcup, Farwell, the trustee named in the deed of trust, and the C. C. Slaughter Company, to restrain the sale under a deed of trust of certain real estate described in the instrument. Morton, by cross-action, made Mrs. Anna Williams, W. B. Slaughter, J. D. Rawlings, and G. G. Wright parties to the suit, and prayed for judgment for the full amount of the note, interest, and attorney's fees secured by the deed of trust and a foreclosure of the lien. His cause of action against the C. C. Slaughter Company, W. B. Slaughter, and G. G. Wright was to restrain them from disposing of three vendor's lien notes described as the Belle Green Ritchey notes held as collateral to the original note upon which he sought to recover, and to recover against Slaughter as indorser. This appeal is by W. B. Slaughter alone, and Morton is made the sole obligee in the bond. There is found in the statement of facts a stipulation by the parties that the amount of the indebtedness due from Williams is the

principal sum of $5,424, with interest at 10 per cent. from December 6, 1914, "and that to such sum 10 per cent. attorney's fees, as provided for in said note, shall be added, in the event claimant therefor shows himself entitled to recover same." The pleadings of the parties and the judgment show that Slaughter and Williams were adversely interested, in that Slaughter is an indorser upon the principal note executed by Williams, and in the issues made by their pleadings with reference to the three Belle Green Ritchey notes held by Slaughter as collateral to the original obligation. Williams, however, was not made an obligee in the appeal bond, and, while Morton excepted to that part of the judgment which denied him attorney's fees against Williams and Slaughter, he did not appeal from it.

[5] If Williams was in any way a party to this appeal, Morton's cross-assignment of error could be considered. Morton, of course, sought judgment for attorney's fees against both Williams and Slaughter; but Slaughter, being an indorser, is only secondarily liable, and the cross-assignment cannot be considered as to him, and judgment cannot be rendered against him without rendering judgment against Williams, the principal obligor.

[6, 7] No motion was made by Morton to dismiss the appeal because of the defective bond, and after we have rendered a judgment it is too late to dismiss it upon our own motion. The bond, though defective, is sufficient to give this court jurisdiction of the appeal. Hugo v. Seffel, 92 Tex. 414, 49 S. W. 369; Williams v. Wiley, 96 Tex. 148, 71 S. W. 13; Waters Pierce Oil Co. v. State (Sup.) 106 S. W. 326. The question presented here was considered by this court in the case of Wright v. Bott, 163 S. W. 360, on motion for rehearing, and we there held that the appellee's cross-assignment could not be considered. The fact that Morton has not appealed was not called to our attention on the original hearing, and the motion for rehearing is granted, and the judgment heretofore rendered in favor of Morton for the attorney's fees is set aside, and the judgment of the trial court is in all things affirmed.